1   REED R. KATHREIN (139304)
    HAGENS BERMAN SOBOL SHAPIRO LLP
2   715 Hearst Avenue, Suite 202
    Berkeley, CA 94710
3   Telephone: (510) 725-3000
    Facsimile: (510) 725-3001
4   reed@hbsslaw.com

5   LEWIS S. KAHN
    KAHN GAUTHIER SWICK, LLC
6   650 Poydras Street, Suite 2150
    New Orleans, LA 70130
7   Telephone: (504) 455-1400
    Facsimile: (504) 455-1498
8   lewis.kahn@kgscounsel.com

9   Attorneys for Plaintiff

10  [Additional counsel listed on signature page]

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14  WESTEND CAPITAL MANAGEMENT LLC,  )   No.
    Individually and on Behalf of All Others  )
15  Similarly Situated,                        )
                                               )   CLASS ACTION COMPLAINT FOR
16                           Plaintiff,         )   VIOLATION OF SECURITIES LAWS
                                               )
17          v.                                 )
                                               )
18  VERIFONE HOLDINGS, INC., DOUGLAS G.  )
    BERGERON, and BARRY ZWARENSTEIN,  )
19                                             )   **JURY TRIAL DEMANDED**
                            Defendants.         )
20  _____ )

21

22

23

24

25

26

27

28

010006-11  212766 V1

**INTRODUCTION**

1.    This is a federal class action on behalf of purchasers of the common stock of VeriFone Holdings, Inc. ("VeriFone" or the "Company") between **August 31, 2006 and December 3, 2007**, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). As alleged herein, Defendants published a series of materially false and misleading statements that Defendants knew and/or recklessly disregarded were materially false and misleading at the time of such publication, and that omitted to reveal material information necessary to make Defendants' statements, in light of such material omissions, not materially false and misleading.

**JURISDICTION AND VENUE**

2.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). VeriFone maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

5.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

6.    Plaintiff **WESTEND CAPITAL MANAGEMENT LLC**, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of VeriFone at artificially inflated prices during the Class Period and has been damaged thereby.

7.    Defendant **VERIFONE HOLDINGS, INC.** ("VeriFone") is a Delaware corporation with its principal place of business located at 2099 Gateway Place, San Jose, CA.

CLASS ACTION COMPLAINT FOR VIOLATION OF                — 1 —
SECURITIES LAWS
010006-11 212766 VI

1    According to the Company's profile listed on Yahoo Finance, VeriFone engages in the design,

2    marketing, and service of transaction automation systems that enable electronic payments between

3    consumers, merchants, and financial institutions.    Its products include countertop electronic

4    payment systems that accept magnetic, smart card, and contactless/radio frequency identification

5    cards and that support credit, debit, check, and electronic benefits transfers; as well as a range of

6    pre-paid products, including gift cards and loyalty programs; a line of wireless system solutions

7    that support IP-based CDMA, GPRS, and Wi-Fi technologies for connectivity; a family of products

8    for petroleum companies, such as integrated electronic payment systems that combine card

9    processing, fuel dispensing, and ECR functions, as well as payment systems for integration with

10   petroleum pump controllers and systems; and server-based transaction products that enable

11   merchants to integrate payment functionality into PC-based electronic systems. In addition, the

12   Company offers a range of client services and customized application development services.

13   VeriFone's customers include financial institutions, payment processors, petroleum companies,

14   retailers, government organizations, and healthcare companies, as well as independent sales

15   organizations in North America, Europe, the Middle East, Africa, Asia/Pacific, and Latin America

16         8.      Defendant **DOUGLAS G. BERGERON** ("Bergeron") is, and during the Class

17   Period was, Chief Executive Officer and Chairman of the Board of Directors of the Company.

18   During the Class Period, Defendant Bergeron signed and certified the Company's SEC filings,

19   including but not limited to VeriFone's Form(s) 10-Q and its fiscal 2006 Form 10-K.

20         9.      Defendant **BARRY ZWARENSTEIN** ("Zwarenstein") is, and during the Class

21   Period was, Chief Financial Officer and Principal Accounting Officer of the Company.  During the

22   Class Period, Defendant Zwarenstein signed and certified the Company's SEC filings, including

23   but not limited to VeriFone's Form(s) 10-Q and its fiscal 2006 Form 10-K.

24         10.     The Defendants referenced above in ¶¶ 8 – 9 supra are referred to herein as the

25   "Individual Defendants."

26         11.     Because of the Individual Defendants' positions with the Company, they had access

27   to the adverse undisclosed information about its business, operations, products, operational trends,

28   financial statements, markets and present and future business prospects via access to internal

1  corporate documents (including the Company's operating plans, budgets and forecasts and reports

2  of actual operations compared thereto), conversations and connections with other corporate officers

3  and employees, attendance at management and Board of Directors meetings and committees

4  thereof, and via reports and other information provided to them in connection therewith.

5      12.    It is appropriate to treat the Individual Defendants as a group for pleading purposes

6  and to presume that the false, misleading and incomplete information conveyed in the Company's

7  public filings, press releases, and other publications as alleged herein are the collective actions of

8  the narrowly defined group of Defendants identified above.  Each of the above officers of

9  VeriFone, by virtue of their high-level positions with the Company, directly participated in the

10  management of the Company, was directly involved in the day-to-day operations of the Company

11  at the highest levels, and was privy to confidential proprietary information concerning the

12  Company and its business, operations, products, growth, financial statements, and financial

13  condition, as alleged herein.  Said Defendants were involved in drafting, producing, reviewing,

14  and/or disseminating the false and misleading statements and information alleged herein; were

15  aware, or recklessly disregarded, that the false and misleading statements were being issued

16  regarding the Company; and approved or ratified these statements, in violation of the federal

17  securities laws.

18      13.    As officers and controlling persons of a publicly-held company whose common

19  stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the

20  New York Stock Exchange (the "NYSE"), and governed by the provisions of the federal securities

21  laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful

22  information with respect to the Company's financial condition and performance, growth,

23  operations, financial statements, business, products, markets, management, earnings, and present

24  and future business prospects, and to correct any previously-issued statements that had become

25  materially misleading or untrue, so that the market price of the Company's publicly-traded

26  common stock would be based upon truthful and accurate information.  The Individual Defendants'

27  misrepresentations and omissions during the Class Period violated these specific requirements and

28  obligations.

CLASS ACTION COMPLAINT FOR VIOLATION OF          - 3 -
SECURITIES LAWS
010006-11 212766 V1

14.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public filings, shareholder and investor reports, and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with VeriFone, each of the Individual Defendants had access to the adverse undisclosed information about VeriFone's business prospects, financial condition, and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about VeriFone and its business materially false and misleading.

15.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.   Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

16.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of VeriFone common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding VeriFone's business, operations, management, and the intrinsic value of VeriFone common stock; (ii) enabled Defendants to artificially inflate the price of VeriFone shares; (iii) enabled VeriFone insiders to sell millions of dollars of their privately held VeriFone shares while in possession of material adverse non-public information about the Company; and (iv) caused Plaintiff and other members of the Class to purchase VeriFone common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

17.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of VeriFone between **August 31, 2006 and December 3, 2007**, inclusive (the "Class") and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

18.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, VeriFone common shares were actively traded on the NYSE. As of December 8, 2006, the Company had over 81.823 million shares of common stock issued and outstanding. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by VeriFone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

19.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

20.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

21.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

CLASS ACTION COMPLAINT FOR VIOLATION OF
SECURITIES LAWS
010006-11 212766 V1

A.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

B.    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of VeriFone; and

C.    to what extent the members of the Class have sustained damages and the proper measure of damages.

22.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### Statements Made During the Class Period

23.    **3Q:F06 Results Announced**. On August 31, 2006, Defendants published a release announcing purported strong results for the fiscal third quarter of 2006, the period ended July 31, 2006. This release stated, in part, the following:

> **VeriFone Reports Third Quarter Fiscal 2006 Results; Record Third Quarter Revenues of $148 Million; EBITDA Margins, as Adjusted, Increased to 22.6% for the Quarter; Third Quarter GAAP Net Income Increased 156%**
>
> VeriFone Holdings, Inc. (NYSE: PAY), a leading global provider of technology that enables electronic payment transactions, today announced financial results for the three months ended July 31, 2006.
>
> Net revenues for the three months ended July 31, 2006, were $147.6 million, an increase of 17% over net revenues of $125.7 million for the comparable period of fiscal 2005. The increase was driven by a 19% increase in net revenues from VeriFone's North America business and a 16% increase in net revenues in VeriFone's International business.
>
> Gross margins, under generally accepted accounting principles (GAAP), for the three months ended July 31, 2006, were 45.0%, compared to 40.7% for the three months ended July 31, 2005. Gross margins, excluding non-cash amortization of purchased intangibles and stock-based compensation expense, expanded for the

seventh consecutive quarter and reached 45.9% compared to 42.0% for the three months ended July 31, 2005.

Net income for the three months ended July 31, 2006, was $16.8 million, or $0.24 per diluted share, compared to $6.5 million, or $0.10 per diluted share, for the comparable period of fiscal 2005. Net income, as adjusted, which excludes non-cash amortization of purchased intangibles and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended July 31, 2006, was $19.7 million, or $0.28 per diluted share, compared to $13.1 million, or $0.20 per diluted share, for the comparable period of fiscal 2005.

24.     The August 31, 2006 release also quoted Defendant Bergeron, in part, as follows:

"We are once again extremely pleased with the consistency of our quarterly results, demonstrated by our tenth consecutive quarter with double digit revenue growth and our eighth consecutive quarter of expanded EBITDA as adjusted margins, which reached a record level of 22.6% in the quarter," said Douglas G. Bergeron, Chairman and Chief Executive Officer. "We are expecting to close the acquisition of Lipman Electronic Engineering Ltd. by November 1, 2006, and remain confident that we will receive clearance by the United States Department of Justice very shortly. We remain on track to deliver another year of outstanding results and we remain confident in our long-term model, which calls for annual revenue growth of 10 to 15% and annual adjusted net income per share growth of 20% or more."

"Based on our confidence with our near term and long term outlook, we are raising our FY06 year end guidance to $1.07 to $1.08 of adjusted net income per share. We are also raising our FY07 guidance to $1.40 to $1.42 of adjusted net income per share, assuming a November 1, 2006, completion of the Lipman acquisition," continued Bergeron.

25.     On the same day as the August 31, 2006 release, Defendants hosted a conference call for shareholders and analysts during which Defendant Zwarenstein also provided purported forward guidance for the fourth quarter of 2006 and for full year 2007, stating, in part, as follows:

Our guidance for the fourth quarter is for revenue of between $150 and $152 million. Net income, as adjusted, are between $19.4 and $20.1 million, and GAAP net income of between $16 and $16.7 million. With an estimated 69.2 million fully diluted shares outstanding, we are expecting EPS on a net income adjusted basis of between $0.28 and $0.29 and on a GAAP basis of between $0.23 and $0.24.

Based on this, we are increasing our guidance for the full 2006 year. Revenue in the range of $574 to $576 million and EPS on a net income as adjusted basis of between $1.07 and $1.08, and on a GAAP basis, of between $0.89 and $0.90. Concerning our current expectations for fiscal 2007 earnings, we are reaffirming our previously stated long-term business model, which calls for organic growth in per share net income as adjusted earnings of around 20%.

Based upon our improved 2006 results, our expectations for 2007 adjusted earnings are now in the range of $1.28 to $1.30 excluding the impact of the Lipman acquisition. Incremental to this, we are also reaffirming our previous statement made on April 10 [inaudible] where we announced the Lipman offer. That is, we expect to enjoy the benefit of full-year accretion from the acquisition of Lipman of approximately $0.12 per share.

CLASS ACTION COMPLAINT FOR VIOLATION OF                         - 7 -
SECURITIES LAWS
010006-11 212766 V1

Taking into account both the anticipated organic growth and the accretion from the Lipman acquisition, we are currently anticipating EPS, on a net income as adjusted basis, in the range of $1.40 to $1.42 per share for the fiscal 2007 year starting on November 1, 2006.

26.    **3Q:F06 Form 10-Q.**    On or about September 1, 2006, Defendants filed the Company's 3Q:F06 Form 10-Q for the fiscal quarter ending July 31, 2006, signed and certified by Defendants Bergeron and Zwarenstein, with the SEC. In addition to making substantially similar statements concerning the Company's operations and financial condition as had been published previously, the 3Q:F06 Form 10-Q also reported statements concerning the Company's Significant Accounting Policies and the Basis of its Accounting Presentation, stating, in part, as follows:

Note 2. Summary of Significant Accounting Policies

Unaudited Interim Financial Information

The accompanying condensed consolidated balance sheet as of July 31, 2006, the condensed consolidated statements of operations for the three and nine months ended July 31, 2006 and 2005, and the condensed consolidated statements of cash flows for the nine months ended July 31, 2006 and 2005 are unaudited. These unaudited interim condensed consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles for interim financial information, Form 10-Q and Article 10 of Regulation S-X. In the opinion of the Company's management, the unaudited interim condensed consolidated financial statements have been prepared on the same basis as the annual consolidated financial statements, except for the adoption of SFAS No. 123(R), Share-Based Payment effective May 1, 2005, using the modified-prospective-transition method, and include all adjustments of a normal recurring nature necessary for the fair presentation of the Company's financial position as of July 31, 2006, its results of operations for the three and nine months ended July 31, 2006 and 2005, and its cash flows for the nine months ended July 31, 2006 and 2005....

27.    **Controls.**    The Company's 3Q:F06 Form 10-Q also contained representations which attested to the purported effectiveness and sufficiency of the Company's controls and procedures, including as follows:

ITEM 4.                **CONTROLS AND PROCEDURES**

(a)    Evaluation of disclosure controls and procedures.

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

(b)   Changes in internal control over financial reporting.

During the third quarter of our fiscal year ending October 31, 2006, we implemented the following changes to internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities Exchange Act of 1934):

·     enhanced the secondary review for certain sales orders to ensure proper accounting;

·     issued additional formal accounting policies and enhanced processes surrounding the recording of certain transactions for the purposes of enhancing internal controls.

These actions represent management's continued emphasis to adopt internal control related to developing business needs and to enhance the internal control environment as management continues to prepare for reporting on our internal control over financial reporting, as required by Section 404 of the Sarbanes-Oxley Act of 2002.

28.    **Certifications.**  In addition to the foregoing, the Company's 3Q:F06 Form 10-Q also contained certifications by Defendants Bergeron and Zwarenstein, that attested to the purported accuracy and completeness of the Company's financial and operational reports, including:

**CERTIFICATION**

1.     I have reviewed this quarterly report on Form 10-Q of VeriFone Holdings, Inc.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the

effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(c)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: September 1, 2006

By: /s/ **DOUGLAS G. BERGERON**
Douglas G. Bergeron
Chairman and Chief Executive Officer

* * *

Date: September 1, 2006

By: /s/ **BARRY ZWARENSTEIN**
Barry Zwarenstein
Senior Vice President and Chief Financial Officer

**CERTIFICATION PURSUANT TO
18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

I, Douglas G. **Bergeron**, Chief Executive Officer, and I, Barry **Zwarenstein**, Chief Financial Officer, each certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that the Report of VeriFone Holdings, Inc. (the "Company") on Form 10-Q for the quarterly period ended July 31, 2006, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in such Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: September 1, 2006

By: /s/ **DOUGLAS G. BERGERON**
Douglas G. Bergeron
Chairman and Chief Executive Officer

CLASS ACTION COMPLAINT FOR VIOLATION OF    - 10 -
SECURITIES LAWS
010006-11 212766 V1

By: /s/ **BARRY ZWARENSTEIN**
Barry Zwarenstein
Senior Vice President and Chief Financial Officer

29.     Following the publication of these purported strong financial results, shares of VeriFone rallied.  Taking full advantage of the artificial inflation in the price of Company stock as a result of the publication of Defendants' materially false and misleading statements, Company insiders immediately liquidated large amounts of their personally held VeriFone stock, as follows:

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 4-Dec-06 | Bergeron Douglas Officer | 20,900 | Sale at $34.33 - $34.57 | $720,000 |
| 4-Dec-06 | Bergeron Douglas Officer | 61,100 | Sale at $33.99 - $34.32 | $2,087,000 |
| 1-Dec-06 | Atkinson William G. Officer | 970 | Sale at $33.38 - $33.60 | $32,000 |
| 1-Dec-06 | Waller Elmore Officer | 1,942 | Sale at $33.38 - $33.60 | $65,000 |
| 1-Dec-06 | Waller Elmore Officer | 8,058 | Sale at $33.12 - $33.37 | $268,000 |
| 1-Dec-06 | Turnbull David Officer | 1,552 | Sale at $33.38 - $33.60 | $52,000 |
| 1-Dec-06 | Turnbull David Officer | 6,448 | Sale at $33.12 - $33.37 | $214,000 |
| 1-Dec-06 | Atkinson William G. Officer | 4,030 | Sale at $33.12 - $33.37 | $134,000 |
| 1-Dec-06 | Adams Jesse Officer | 960 | Sale at $33.38 - $33.60 | $32,000 |
| 1-Dec-06 | Adams Jesse Officer | 3,985 | Sale at $33.12 - $33.37 | $132,000 |
| 1-Dec-06 | Bergeron Douglas Officer | 17,500 | Sale at $33.40 - $33.63 | $587,000 |
| 1-Dec-06 | Bergeron Douglas Officer | 50,500 | Sale at $33.26 - $33.40 | $1,683,000 |
| 30-Nov-06 | Zwarenstein Barry Officer | 4,000 | Sale at $32.82 - $33.75 | $133,000 |
| 1-Nov-06 | Waller Elmore Officer | 4,810 | Sale at $29.79 - $30.17 | $144,000 |
| 1-Nov-06 | Waller Elmore Officer | 5,190 | Sale at $29.39 - $29.78 | $154,000 |
| 1-Nov-06 | Turnbull David Officer | 3,849 | Sale at $29.79 - $30.17 | $115,000 |

CLASS ACTION COMPLAINT FOR VIOLATION OF          - 11 -
SECURITIES LAWS
010006-11 212766 V1

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 1-Nov-06 | Turnbull David<br>Officer | 4,151 | Sale at $29.39 - $29.78 | $123,000 |
| 1-Nov-06 | Atkinson William G.<br>Officer | 2,404 | Sale at $29.79 - $30.17 | $72,000 |
| 1-Nov-06 | Atkinson William G.<br>Officer | 2,596 | Sale at $29.39 - $29.78 | $77,000 |
| 1-Nov-06 | Adams Jesse<br>Officer | 3,833 | Sale at $29.79 - $30.17 | $115,000 |
| 1-Nov-06 | Adams Jesse<br>Officer | 4,140 | Sale at $29.39 - $29.78 | $122,000 |
| 1-Nov-06 | Bergeron Douglas<br>Officer | 57,400 | Sale at $29.95 - $30.30 | $1,729,000 |
| 1-Nov-06 | Bergeron Douglas<br>Officer | 28,900 | Sale at $29.66 - $29.94 | $861,000 |
| 1-Nov-06 | Bergeron Douglas<br>Officer | 19,000 | Sale at $29.54 - $29.65 | $562,000 |
| 1-Nov-06 | Bergeron Douglas<br>Officer | 19,700 | Sale at $29.29 - $29.54 | $579,000 |
| 31-Oct-06 | Zwarenstein Barry<br>Officer | 4,000 | Sale at $29 - $29.22 | $116,000 |
| 2-Oct-06 | Turnbull David<br>Officer | 4,611 | Sale at $28.02 - $28.52 | $130,000 |
| 2-Oct-06 | Turnbull David<br>Officer | 3,319 | Sale at $27.63 - $28.01 | $92,000 |
| 2-Oct-06 | Atkinson William G.<br>Officer | 2,881 | Sale at $28.02 - $28.52 | $81,000 |
| 2-Oct-06 | Atkinson William G.<br>Officer | 2,119 | Sale at $27.63 - $28.01 | $59,000 |
| 2-Oct-06 | Adams Jesse<br>Officer | 4,593 | Sale at $28.02 - $28.52 | $130,000 |
| 2-Oct-06 | Adams Jesse<br>Officer | 3,380 | Sale at $27.63 - $28.01 | $94,000 |
| 2-Oct-06 | Bergeron Douglas<br>Officer | 11,100 | Sale at $28.17 - $28.45 | $314,000 |
| 2-Oct-06 | Bergeron Douglas<br>Officer | 17,200 | Sale at $28.05 - $28.16 | $483,000 |
| 29-Sep-06 | Zwarenstein Barry<br>Officer | 4,000 | Sale at $28.55 - $29 | $115,000 |
| 5-Sep-06 | Bergeron Douglas<br>Officer | 114,400 | Sale at $27.97 - $28.13 | $3,209,000 |
| 5-Sep-06 | Bergeron Douglas<br>Officer | 5,400 | Sale at $28.14 - $28.76 | $154,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|------|---------|--------|-------------|-------|
| 1-Sep-06 | Adams Jesse Officer | 8,000 | Sale at $27.25 - $28.11 | $221,000 |
| 1-Sep-06 | Atkinson William G. Officer | 5,000 | Sale at $27.25 - $28.11 | $138,000 |
| 1-Sep-06 | Turnbull David Officer | 8,000 | Sale at $27.25 - $28.11 | $221,000 |
| 31-Aug-06 | Zwarenstein Barry Officer | 4,000 | Sale at $22.70 - $23.24 | $92,000 |

30.    Unbeknownst to shareholders, however, the statements contained in VeriFone's August 31, 2006 release and those statements contained in the Company's 3Q:F06 Form 10-Q, referenced above, were each materially false and misleading when made, and were known by Defendants to be false or were recklessly disregarded as such thereby, for the following reasons, among others:

A.    At all times during the Class Period, it was not true that the Company's purported success was the result of its integration of acquisitions or Defendants' competent management when, in fact, throughout the Class Period, Defendants had propped up the Company's results by manipulating VeriFone's accounting for revenues and income, and failed to report other material information about the Company;

B.    At all times during the Class Period, unbeknownst to investors, Defendants had materially overstated the Company's profitability by failing to properly account for the Company's results of operations and by artificially inflating the Company's financial results;

C.    Throughout the Class Period, it was also not true that VeriFone contained adequate systems of internal operational or financial controls, such that VeriFone's reported financial statements were true, accurate, or reliable;

D.    As a result of the foregoing, throughout the Class Period it also was not true that the Company's financial statements and reports were prepared in accordance with GAAP ad SEC rules; and

E.    As a result of the aforementioned adverse conditions which Defendants failed to disclose, throughout the Class Period, Defendants lacked any reasonable basis to claim

CLASS ACTION COMPLAINT FOR VIOLATION OF
SECURITIES LAWS
010006-11 212766 V1

that VeriFone was operating according to plan, or that VeriFone could achieve guidance sponsored and/or endorsed by Defendants.

31.    **4Q:F06 & FY:F06 Results Announced.**    On December 7, 2006, Defendants published a release announcing purported strong results for the fourth quarter and full year fiscal 2006, the period ended October 31, 2006. This release stated, in part, the following:

**Fourth-Quarter Revenues Increased 20% to $157 Million**
**EBITDA, as Adjusted, Margins Increased to 24.2% for the Quarter**
**Fourth Quarter Net Income, as Adjusted, Increased 50% to $22.3 Million**

SAN JOSE, Calif.--(BUSINESS WIRE) VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months and fiscal year ended October 31, 2006.

Net revenues for the three months ended October 31, 2006, were $156.6 million, an increase of 20% over net revenues of $130.5 million for the comparable period of 2005. The increase was driven by a 30% increase in net revenues from VeriFone's International business and a 14% increase in net revenues from VeriFone's North America business.

Gross margins, under generally accepted accounting principles (GAAP), for the three months ended October 31, 2006, were 46.0%, compared to 42.7% for the three months ended October 31, 2005. Gross margins, excluding non-cash amortization of purchased intangibles and stock-based compensation expense, expanded for the eighth consecutive quarter and reached 47.1% for the three months ended October 31, 2006, compared to 44.0% for the comparable period of 2005.

Net income for the three months ended October 31, 2006, was $13.9 million, or $0.20 per diluted share, compared to $12.1 million, or $0.18 per diluted share, for the comparable period of fiscal 2005. GAAP net income was impacted in the quarter by the $4.1 million after-tax write off of debt issuance costs, attributable to the refinancing of outstanding debt in connection with the Lipman acquisition. Net income, as adjusted, which excludes non-cash amortization of purchased intangibles and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended October 31, 2006, was $22.3 million, or $0.32 per diluted share, compared to $14.9 million, or $0.22 per diluted share, for the comparable period of fiscal 2005.

\*    \*    \*

Net revenues for the fiscal year ended October 31, 2006, were $581.0 million, an increase of 20% over the $485.4 million recorded for fiscal 2005.

Net income for the fiscal year ended October 31, 2006, was $59.5 million, compared to $33.2 million for fiscal 2005. Net income, as adjusted, for the fiscal year ended October 31, 2006, was $76.4 million, compared to $49.7 million, for fiscal 2005.

EBITDA, as adjusted, for the fiscal year ended October 31, 2006, was $130.4 million, an increase of 51% over the $86.4 million recorded for fiscal 2005.

1     EBITDA, as adjusted, margins for the fiscal year ended October 31, 2006, were
2     22.4%, compared to 17.8% for the comparable period of 2005.

3     32.     The December 7, 2006 release also quoted Defendant Bergeron, in part, as follows:

4     "VeriFone has completed another outstanding quarter and achieved record revenue
      and earnings for fiscal year 2006. This year was highlighted by our transformative
5     acquisition of Lipman which combined the two strongest financial performers in the
      industry to create the world leader in payment technology," said Douglas G.
6     Bergeron, Chairman and Chief Executive Officer.

7     "We enter our new financial year poised to capitalize on our numerous competitive
      advantages and our very wide range of product offerings," continued Bergeron.
8     "The integration of Lipman into VeriFone has been completed ahead of schedule
      and we have created a single-branded, unified company with tremendous scale
9     advantages. Already, we are enjoying several supply chain efficiencies and earnings
      accretion."
10
11    "As a result, we have increased our internal expectations for fiscal Q1 2007 net
      earnings per share, as adjusted, to be in the range of $0.33 to $0.34. We remain very
12    confident of our prospects in fiscal 2007."

13    33.     Also on December 7, 2006 release, Defendants hosted a conference call for

14    shareholders and analysts during which Defendant Zwarwnstein also provided purported forward

15    guidance, stating, in part, as follows:

16    In the guidance I am about to provide, please note that it assumes combined
      integration expenses and Oracle 11i expenses in the first quarter of $1.3 million.
17    Our guidance for the first quarter is for revenue of between $212 million and $215
      million, excluding the non-cash GAAP charge of between $4 million and $5 million
18    for the deferred revenue adjustment. Net income as adjusted is expected to be
      between $27.5 million and $28.5 million and GAAP net income to be between $1.9
19    million and $2.9 million. With the estimated 83.3 million fully diluted shares
      outstanding, including the 13.5 million shares that were issued as part of the Lipman
20    transaction, we are expecting earnings per share on a net income as adjusted basis of
      between $0.33 and $0.34 and on a GAAP basis of between $0.02 and $0.03.
21
      When questioned by analyst Greg Smith as to why Defendants had not reiterated FY 2007 forward
22
      guidance as they had done previously, the following exchange occurred:
23
24    GREG SMITH: Great. And then, I guess, for Barry, you originally had provided FY
      2007 guidance and now you are providing guidance for just the first quarter, how
25    should we think about the prior full-year EPS range you provided?

26    BARRY ZWARENSTEIN: Thank you for asking that because it could be confusing
      to some investors. It has been the Company's policy since the IPO to provide next
27    quarter guidance only. As a result -- and a long-term guidance roadmap that we
      could grow EPS as adjusted on a 20% or better basis without acquisitions, without
28    transformative acquisitions like Lipman. Because of all of that, we broke our own

CLASS ACTION COMPLAINT FOR VIOLATION OF          - 15 -
SECURITIES LAWS
010006-11 212766 V1

self-imposed rule if you will and then did the math for you when we were at $1.08 for a year, $1.07 multiplied times 1.2 and out of the $0.12. We weren't intending to give full-year guidance; we were showing you what our long-term model would steer you to. We are now continuing to resort to our time-proven practices of providing quarterly guidance and frankly, it is up to you to make your best judgment on long-term full-year guidance.

34.　**FY:2006 Form 10-K.** On or about December 18, 2006, Defendants filed with the SEC the Company's FY2006 Form 10-K, signed and certified by Defendants Bergeron and Zwarenstein, for the fiscal year ended October 31, 2006. In addition to making substantially similar statements concerning the Company operations, finances, controls and procedures, and its GAAP and SEC accounting rule compliance as had been published previously, the FY2006 Form 10-K also reported statements concerning the Company's purported Revenue Recognition Policies, stating, in part, as follows:

**Revenue Recognition**

Net revenues from System Solutions are recognized upon shipment, delivery, or customer acceptance of the product as required pursuant to the customer arrangement. Net revenues from services such as customer support are initially deferred and then recognized on a straight-line basis over the term of the contract. Net revenues from services such as installations, equipment repairs, refurbishment arrangements, training and consulting are recognized as the services are rendered. For arrangements with multiple elements, we allocate net revenues to each element using the residual method based on objective and reliable evidence of the fair value of the undelivered element. We defer the portion of the arrangement fee equal to the objective evidence of fair value of the undelivered elements until they are delivered.

While the majority of our sales transactions contain standard business terms and conditions, there are some transactions that contain non-standard business terms and conditions. As a result, significant contract interpretation is sometimes required to determine the appropriate accounting including: (1) whether an arrangement exists and what is included in the arrangement; (2) how the arrangement consideration should be allocated among the deliverables if there are multiple deliverables; (3) when to recognize net revenues on the deliverables; (4) whether undelivered elements are essential to the functionality of delivered elements; and (5) whether we have fair value for the undelivered element. In addition, our revenue recognition policy requires an assessment as to whether collectibility is probable, which inherently requires us to evaluate the creditworthiness of our customers. Changes in judgments on these assumptions and estimates could materially impact the timing of revenue recognition.

35.　Following the publication of these purported strong financial results shares of VeriFone continued to trade at artificially inflated prices. Taking full advantage of the artificial inflation in the price of Company stock caused as a result of the publication of Defendants'

materially false and misleading statements, Company insiders immediately liquidated large
amounts of their personally held VeriFone stock, as follows:

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 8-Feb-07 | Angel Isaac Officer | 15,000 | Sale at $40.60 - $40.75 | $610,000 |
| 1-Feb-07 | Atkinson William G. Officer | 2,938 | Sale at $40.25 - $40.44 | $119,000 |
| 1-Feb-07 | Atkinson William G. Officer | 5,062 | Sale at $39.96 - $40.25 | $203,000 |
| 1-Feb-07 | Waller Elmore Officer | 4,509 | Sale at $40.24 - $40.44 | $182,000 |
| 1-Feb-07 | Waller Elmore Officer | 5,491 | Sale at $39.96 - $40.23 | $220,000 |
| 1-Feb-07 | Adams Jesse Officer | 7,773 | Sale at $40.25 - $40.44 | $314,000 |
| 1-Feb-07 | Adams Jesse Officer | 13,393 | Sale at $39.96 - $40.25 | $537,000 |
| 22-Jan-07 | Atkinson William George Officer | 7,329 | Sale at $37.90 - $38.08 | $278,000 |
| 22-Jan-07 | Atkinson William George Officer | 10,671 | Sale at $37.47 - $37.86 | $402,000 |
| 10-Jan-07 | Bergeron Douglas Officer | 200,000 | Sale at $35.30 - $35.55 | $7,085,000 |
| 9-Jan-07 | Zwarenstein Barry Officer | 4,000 | Sale at $35.21 - $35.58 | $142,000 |
| 3-Jan-07 | Waller Elmore Officer | 10,000 | Sale at $35.58 - $36.10 | $358,000 |
| 3-Jan-07 | Adams Jesse Officer | 5,100 | Sale at $35.81 - $36.13 | $183,000 |
| 3-Jan-07 | Adams Jesse Officer | 10,424 | Sale at $35.11 - $35.80 | $370,000 |
| 19-Dec-06 | Timm Daniel L Director | 3,000,000 | Sale at $35.78 | $107,340,000 |
| 19-Dec-06 | Roche Collin E Director | 3,000,000 | Sale at $35.78 | $107,340,000 |
| 19-Dec-06 | Gtcr Co Invest Lp Beneficial Owner (10% Or More) | 25,387 | Sale at $35.87 | $910,631 |
| 19-Dec-06 | Bondy Craig A Director | 3,000,000 | Sale at $35.78 | $107,340,000 |

CLASS ACTION COMPLAINT FOR VIOLATION OF
SECURITIES LAWS
010006-11  212766 V1

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 19-Dec-06 | GTCR CAPITAL PARTNERS L P Beneficial Owner (10% Or More) | 201,571 | Sale at $35.78 | $7,212,210 |
| 19-Dec-06 | GTCR Fund VII LP Beneficial Owner (10% Or More) | 2,773,042 | Sale at $35.78 | $99,219,442 |
| 13-Dec-06 | Bergeron Douglas Officer | 3,700 | Sale at $37.14 - $37.21 | $138,000 |
| 13-Dec-06 | Bergeron Douglas Officer | 12,500 | Sale at $36.81 - $37.12 | $462,000 |
| 13-Dec-06 | Bergeron Douglas Officer | 18,840 | Sale at $36.61 - $36.80 | $692,000 |
| 13-Dec-06 | Bergeron Douglas Officer | 37,800 | Sale at $36.51 - $36.60 | $1,382,000 |
| 13-Dec-06 | Bergeron Douglas Officer | 27,200 | Sale at $36.39 - $36.51 | $991,000 |
| 12-Dec-06 | Zwarenstein Barry Officer | 4,000 | Sale at $36.86 - $37.57 | $149,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 12,300 | Sale at $36.29 - $36.5 | $448,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 10,600 | Sale at $35.97 - $36.28 | $383,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 28,800 | Sale at $35.89 - $35.96 | $1,035,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 21,300 | Sale at $35.75 - $35.89 | $763,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 26,900 | Sale at $35.55 - $35.74 | $959,000 |

36.    The statements made by Defendants and contained in the Company's December 7, 2006 release and in the Company's FY2006 Form 10-K were materially false and misleading when made, and were know by Defendants to be false at that time or were recklessly disregarded as such thereby for the reasons stated herein in ¶¶ 30(a)-(e), supra.

37.    **1Q:F07 Results Announced.** On March 1, 2007, Defendants published a release announcing purported strong results for the first quarter of fiscal 2006, the period ended January 31, 2007. This release stated, in part, the following:

**VeriFone Reports First Quarter Fiscal 2007 Results;
Revenues of $217 million Grew 61% due to Lipman Acquisition and Strong
International Performance Record EBITDA, as adjusted, margins of 25.7%
EPS, as adjusted, increases 54% to 37 cents**

VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended January 31, 2007. The Company's first quarter results reflect the November 1, 2006, acquisition of Lipman and, because of the integration of Lipman's products and distribution channels as well as the lack of comparable quarter ends of VeriFone and Lipman, are compared to pre-acquisition results of prior fiscal periods.

Net revenues, for the three months ended January 31, 2007, were $216.6 million, 61% higher than the net revenues of $134.6 million for the comparable period of 2006. The record revenues were driven by the Lipman acquisition and a strong performance internationally.

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, were 47.1%, for the three months ended January 31, 2007, compared to 45.6% for the comparable period of 2006. GAAP gross margins for the three months ended January 31, 2007, were 37.6%, compared to 44.3% for the three months ended January 31, 2006, as a result of increased amortization of purchased technology assets and the step-up in inventory.

EBITDA, as adjusted, margins for the three months ended January 31, 2007, expanded for the tenth consecutive quarter and reached a record level of 25.7%, compared to the 21.0% recorded in the three months ended January 31, 2006.

GAAP EPS for the three months ended January 31, 2007, was a loss of ($0.01) per diluted share, compared to $0.20 per diluted share, for the comparable period of fiscal 2006, due to acquisition related charges and a higher GAAP tax rate. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended January 31, 2007, increased 54% to $0.37 per diluted share, compared to $0.24 per diluted share, for the three months ended January 31, 2006.

38.    The March 1, 2007 release also quoted Defendant Bergeron, in part, as follows:

"VeriFone has successfully completed its first quarter since our transformative acquisition of Lipman. I am delighted both with the progress that we have made in integrating Lipman's business into VeriFone and in generating another very strong quarter financially and operationally," said Douglas G. Bergeron, Chairman and Chief Executive Officer.

"VeriFone's newly configured worldwide sales force is serving customers through a fully integrated distribution channel and supply chain. At the same time we have been reducing inventory and generating considerable operating cash flow," continued Bergeron.

"Based on these results, we are increasing our second quarter internal expectations for net income, as adjusted, per share to be in the range of $0.36 to $0.37. We remain very confident of our prospects for fiscal 2007."

39.    Following the publication of the March 1, 2007 release, later the same day, Defendants also hosted a conference call for shareholders and analysts during which Defendant Zwarenstein also provided purported forward guidance, stating, in part, as follows:

BARRY ZWARENSTEIN, EVP & CFO, VERIFONE HOLDINGS, INC.:

Before turning to our guidance for the second quarter, I want to draw your attention to the fact that we have not completed our purchase price accounting and the audit of the acquired opening balance sheet. Hence, there will be further adjustments in the upcoming quarters and consequently a goodwill figure will be subject to adjustments during the remainder of the current fiscal year.

Our guidance now for the second quarter is for revenue of between $218 million and $220 million. With respect to net income for the second quarter, we're now increasing our internal expectations for net income as adjusted to be between $30 million and $31 million and GAAP net income to be between $9.9 million and $10.9 million.

With the estimated 84 million fully diluted shares outstanding, we're now expecting EPS on a net income as adjusted basis of between $0.36 and $0.37 and on a GAAP basis of between $0.12 and $0.13.

40.    **1Q:F07 Form 10-Q.**  On or about March 9, 2007, Defendants filed with the SEC the Company's 1Q:F07 Form 10-Q, for the fiscal quarter ended January 31, 2007, signed and certified by Defendants Bergeron and Zwarenstein.  In addition to making substantially similar statements concerning the Company operations, financial results, control and procedures and the Company's purported compliance with GAAP accounting and SEC reporting rules as had been published previously, the 1Q:F07 Form 10-Q again contained Certifications by Defendants Bergeron and Zwarenstein that attested to the purported accuracy and completeness of these results, in part, as follows:

**CERTIFICATION PURSUANT TO**
**18 U.S.C. SECTION 1350,**
**AS ADOPTED PURSUANT TO**
**SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

I, Douglas G. **Bergeron**, Chief Executive Officer, and I, Barry **Zwarenstein**, Chief Financial Officer, each certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that the Report of VeriFone Holdings, Inc. (the "Company") on Form 10-Q for the quarterly period ended January 31, 2007, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in such Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: March 9, 2007

CLASS ACTION COMPLAINT FOR VIOLATION OF             - 20 -
SECURITIES LAWS
010006-11 212766 VI

By:    /s/ **DOUGLAS G. BERGERON**
       Douglas G. Bergeron
       Chairman and Chief Executive Officer

By:    /s/ **BARRY ZWARENSTEIN**
       Barry Zwarenstein
       Executive Vice President and Chief Financial Officer

41.    The statements made by Defendants and contained in the Company's March 1, 2007 release and in the Company's 1Q:F07 Form 10-K were materially false and misleading when made, and were know by Defendants to be false at that time or were recklessly disregarded as such thereby for the reasons stated herein in ¶¶ 30(a)-(e), supra.

42.    Following the publication of these purported strong financial results shares of VeriFone continued to trade at artificially inflated prices.  Taking full advantage of the artificial inflation in the price of Company stock caused as a result of the publication of Defendants' materially false and misleading statements, Company insiders immediately liquidated large amounts of their personally held VeriFone stock, as follows:

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 14-May-07 | Bergeron Douglas Officer | 88,100 | Sale at $37.78 - $37.99 | $3,338,000 |
| 10-May-07 | Atkinson William G. Officer | 10,000 | Sale at $37.51 - $38.30 | $379,000 |
| 10-May-07 | Bergeron Douglas Officer | 21,671 | Sale at $38.07 - $38.34 | $828,000 |
| 10-May-07 | Bergeron Douglas Officer | 28,164 | Sale at $37.97 - $38.07 | $1,071,000 |
| 10-May-07 | Bergeron Douglas Officer | 47,600 | Sale at $37.78 - $37.96 | $1,803,000 |
| 8-May-07 | Zwarenstein Barry Officer | 8,200 | Sale at $37.14 - $37.58 | $306,000 |
| 8-May-07 | Zwarenstein Barry Officer | 9,700 | Sale at $37.58 - $37.88 | $366,000 |
| 8-May-07 | Angel Isaac Officer | 15,000 | Sale at $37.56 - $37.58 | $564,000 |
| 1-May-07 | Adams Jesse Officer | 9,334 | Sale at $35.50 - $35.81 | $333,000 |
| 1-May-07 | Adams Jesse Officer | 11,833 | Sale at $35.82 - $35.97 | $425,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 1-May-07 | Atkinson William G. Officer | 3,527 | Sale at $35.50 - $35.81 | $126,000 |
| 1-May-07 | Atkinson William G. Officer | 4,473 | Sale at $35.82 - $35.97 | $161,000 |
| 11-Apr-07 | Bergeron Douglas Officer | 24,000 | Sale at $37.50 - $37.8 | $904,000 |
| 10-Apr-07 | Atkinson William G. Officer | 3,215 | Sale at $37.48 - $37.87 | $121,000 |
| 10-Apr-07 | Zwarenstein Barry Officer | 12,215 | Sale at $37.87 - $38.04 | $464,000 |
| 10-Apr-07 | Zwarenstein Barry Officer | 5,785 | Sale at $37.48 - $37.87 | $218,000 |
| 10-Apr-07 | Angel Isaac Officer | 15,000 | Sale at $37.85 - $37.87 | $568,000 |
| 10-Apr-07 | Atkinson William G. Officer | 6,785 | Sale at $37.87 - $38.04 | $258,000 |
| 2-Apr-07 | Atkinson William G. Officer | 2,449 | Sale at $36.36 - $37.76 | $91,000 |
| 2-Apr-07 | Atkinson William G. Officer | 5,551 | Sale at $36.18 - $36.35 | $201,000 |
| 2-Apr-07 | Adams Jesse Officer | 2,212 | Sale at $36.43 - $36.85 | $81,000 |
| 2-Apr-07 | Adams Jesse Officer | 12,392 | Sale at $36.18 - $36.42 | $450,000 |
| 22-Mar-07 | Atkinson William G. Officer | 894 | Disposition (Non Open Market) at $37.60 | $33,614 |
| 22-Mar-07 | Adams Jesse Officer | 894 | Disposition (Non Open Market) at $37.60 | $33,614 |
| 22-Mar-07 | Zwarenstein Barry Officer | 894 | Disposition (Non Open Market) at $37.60 | $33,614 |
| 22-Mar-07 | Bergeron Douglas Officer | 3,575 | Disposition (Non Open Market) at $37.60 | $134,420 |
| 15-Mar-07 | Zwarenstein Barry Officer | 5,400 | Sale at $36 - $36.22 | $195,000 |
| 15-Mar-07 | Zwarenstein Barry Officer | 12,600 | Sale at $35.75 - $35.98 | $452,000 |
| 15-Mar-07 | Bergeron Douglas Officer | 19,700 | Sale at $36.10 - $36.27 | $713,000 |
| 15-Mar-07 | Bergeron Douglas Officer | 69,613 | Sale at $35.92 - $36.1 | $2,507,000 |
| 15-Mar-07 | Bergeron Douglas Officer | 110,687 | Sale at $35.83 - $35.92 | $3,971,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|------|---------|--------|-------------|-------|
| 13-Mar-07 | Angel Isaac Officer | 15,000 | Sale at $35.93 - $36.24 | $541,000 |
| 12-Mar-07 | Atkinson William G. Officer | 6,300 | Sale at $36.38 - $36.62 | $230,000 |
| 12-Mar-07 | Atkinson William G. Officer | 3,700 | Sale at $36.63 - $36.83 | $136,000 |
| 1-Mar-07 | Atkinson William G. Officer | 5,026 | Sale at $38.38 - $38.79 | $194,000 |
| 1-Mar-07 | Atkinson William G. Officer | 2,974 | Sale at $37.23 - $38.37 | $112,000 |
| 1-Mar-07 | Adams Jesse Officer | 8,391 | Sale at $38.38 - $38.79 | $324,000 |
| 1-Mar-07 | Adams Jesse Officer | 4,963 | Sale at $37.23 - $38.37 | $188,000 |

43.    **2Q:F07 Results Announced.**  On May 29, 2007, Defendants published a release announcing purported strong results for the second quarter of fiscal 2007, the period ended April 30, 2007.  This release also stated, in part, the following:

> **VeriFone Reports Second Quarter Fiscal 2007 Results;**
> **Revenues of $217 Million Grew 53% Due to Lipman Acquisition and**
> **Resurgent North American Growth;**
> **Record EBITDA, as Adjusted, Margins of 26.3%;**
> **EPS, as Adjusted, Increases 50% to 39 Cents**
>
> VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended April 30, 2007.
>
> Net revenues, for the three months ended April 30, 2007, were $217.2 million, 53% higher than the net revenues of $142.2 million for the comparable period of 2006. VeriFone's International business increased 97% and VeriFone's North America business increased 19%. The significant increase in sales was driven largely by the acquisition of Lipman, which closed November 1, 2006.
>
>                  * * *
>
> Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.1%, for the three months ended April 30, 2007, compared to 45.7% for the comparable period of 2006. GAAP gross margins for the three months ended April 30, 2007, were 41.5%, compared to 44.6% for the three months ended April 30, 2006, as a result of increased amortization of purchased technology assets, the step-up in inventory and stock-based compensation.

44.    The May 29, 2007 release again quoted Defendant Bergeron in part, as follows:

"I am pleased to report on another very successful quarter for VeriFone as we once again achieved record profitability," said Douglas G. Bergeron, Chairman and Chief Executive Officer. "During the quarter, our record margins drove our robust EPS growth, and also resulted in strong cash flow," continued Bergeron. "We were especially pleased with our continuing success of our wireless products and were delighted with the resurgence of our North American business which grew sequentially 8 percent from the previous quarter."

"Based on these results and the $4 million of revenue which has been recognized in the third quarter, we are increasing our third quarter internal expectations for net revenue to $225 - $227 million and increasing our guidance for net income, as adjusted, per share to a range of $0.39 - $0.40. We remain confident of our prospects for the remainder of fiscal 2007."

45.     **2Q:F07 Form 10-Q**. On or about May 31, 2007, Defendants filed with the SEC the Company's 2Q:F07 Form 10-Q for the fiscal quarter ended April 20, 2007, signed and certified by Defendants Bergeron and Zwarenstein.  In addition to making substantially similar statements concerning the Company operations, financial results, control and procedures and the Company's purported compliance with GAAP accounting and SEC reporting rules, as had been published previously, the 2Q:F07 Form 10-Q again contained Certifications by Defendants Bergeron and Zwarenstein that attested to the purported accuracy and completeness of these results, stating, in part, as follows:

**CERTIFICATION PURSUANT TO
18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

I, Douglas G. **Bergeron**, Chief Executive Officer, and I, Barry **Zwarenstein**, Chief Financial Officer, each certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that the Report of VeriFone Holdings, Inc. (the "Company") on Form 10-Q for the quarterly period ended April 30, 2007, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in such Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: May 31, 2007

By:     /s/ **DOUGLAS G. BERGERON**
         Douglas G. Bergeron
         Chairman and Chief Executive Officer

By:     /s/ **BARRY ZWARENSTEIN**
         Barry Zwarenstein
         Executive Vice President and Chief Financial Officer

46. Following the publication of these purported strong financial results, shares of VeriFone continued to trade at artificially inflated prices. Taking full advantage of the artificial inflation in the price of Company stock caused as a result of the publication of Defendants' materially false and misleading statements, Company insiders immediately liquidated large amounts of their personally held VeriFone stock, as follows:

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 14-Aug-07 | Angel Isaac Officer | 15,000 | Sale at $36.68 - $36.84 | $551,000 |
| 14-Aug-07 | Zwarenstein Barry Officer | 9,700 | Sale at $36.79 - $37.52 | $360,000 |
| 14-Aug-07 | Zwarenstein Barry Officer | 8,300 | Sale at $36.35 - $36.78 | $303,000 |
| 10-Aug-07 | Waller Elmore Officer | 8,600 | Sale at $38.87 - $39.12 | $335,000 |
| 10-Aug-07 | Waller Elmore Officer | 11,400 | Sale at $38.52 - $38.87 | $441,000 |
| 10-Aug-07 | Adams Jesse Officer | 11,000 | Sale at $38.84 - $39.10 | $429,000 |
| 10-Aug-07 | Adams Jesse Officer | 9,000 | Sale at $38.52 - $38.83 | $348,000 |
| 10-Aug-07 | Bergeron Douglas Officer | 83,700 | Sale at $39.05 - $39.15 | $3,273,000 |
| 1-Aug-07 | Adams Jesse Officer | 18,525 | Sale at $36.05 - $36.58 | $673,000 |
| 1-Aug-07 | Adams Jesse Officer | 100 | Sale at $36.48 | $3,647 |
| 1-Aug-07 | Adams Jesse Officer | 17,514 | Sale at $35.62 - $36.04 | $628,000 |
| 1-Aug-07 | Adams Jesse Officer | 24,964 | Sale at $35.05 - $35.61 | $882,000 |
| 12-Jul-07 | Bergeron Douglas Officer | 37,300 | Sale at $36.86 - $37.00 | $1,377,000 |
| 12-Jul-07 | Bergeron Douglas Officer | 47,950 | Sale at $36.61 - $36.86 | $1,761,000 |
| 12-Jul-07 | Bergeron Douglas Officer | 71,450 | Sale at $36.49 - $36.60 | $2,611,000 |
| 12-Jul-07 | Bergeron Douglas Officer | 43,300 | Sale at $36.31 - $36.48 | $1,576,000 |
| 10-Jul-07 | Atkinson William G. Officer | 4,900 | Sale at $36.38 - $36.75 | $179,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 10-Jul-07 | Atkinson William G. Officer | 5,100 | Sale at $36.07 - $36.37 | $185,000 |
| 10-Jul-07 | Zwarenstein Barry Officer | 9,800 | Sale at $36.37 - $36.76 | $358,000 |
| 10-Jul-07 | Zwarenstein Barry Officer | 8,200 | Sale at $36.07 - $36.36 | $297,000 |
| 10-Jul-07 | Angel Isaac Officer | 15,000 | Sale at $36.38 - $36.46 | $546,000 |
| 9-Jul-07 | Waller Elmore Officer | 10,500 | Sale at $36.49 - $36.94 | $386,000 |
| 9-Jul-07 | Waller Elmore Officer | 9,500 | Sale at $36.35 - $36.49 | $346,000 |
| 2-Jul-07 | Atkinson William G. Officer | 5,645 | Sale at $35.11 - $35.43 | $199,000 |
| 2-Jul-07 | Atkinson William G. Officer | 2,355 | Sale at $35.44 - $35.48 | $84,0002 |
| 2-Jul-07 | Adams Jesse Officer | 1,250 | Sale at $35.29 | $44,112 |
| 25-Jun-07 | Roche Collin E Director | 3,500,000 | Sale at $35.37 | $123,794,999 |
| 25-Jun-07 | GTCR Co Invest LP Beneficial Owner (+10%) | 29,619 | Sale at $35.37 | $1,047,624 |
| 25-Jun-07 | Bondy Craig A Director | 3,500,000 | Sale at $35.37 | $123,794,999 |
| 25-Jun-07 | GTCR CAPITAL PARTNERS L P Beneficial Owner (+10%) | 235,165 | Sale at $35.37 | $8,317,786 |
| 25-Jun-07 | GTCR Fund VII LP Beneficial Owner (+ 10%) | 3,235,216 | Sale at $35.37 | $114,429,589 |
| 22-Jun-07 | Atkinson William G. Officer | 224 | Disposition (Non Open Market) at $36.36 | $8,144 |
| 22-Jun-07 | Adams Jesse Officer | 224 | Disposition (Non Open Market) at $36.36 | $8,144 |
| 22-Jun-07 | Zwarenstein Barry Officer | 224 | Disposition (Non Open Market) at $36.36 | $8,144 |
| 22-Jun-07 | Bergeron Douglas Officer | 894 | Disposition (Non Open Market) at $36.36 | $32,505 |
| 13-Jun-07 | Angel Isaac Officer | 15,000 | Sale at $34.36 | $515,400 |
| 13-Jun-07 | Waller Elmore | 20,000 | Sale at $35.00 | $700,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| | Officer | | | |
| 12-Jun-07 | Bergeron Douglas Officer | 46,100 | Sale at $32.87 - $33.10 | $1,521,000 |
| 12-Jun-07 | Bergeron Douglas Officer | 63,800 | Sale at $32.65 - $32.86 | $2,090,000 |
| 12-Jun-07 | Bergeron Douglas Officer | 40,100 | Sale at $32.43 - $32.64 | $1,305,000 |
| 12-Jun-07 | Zwarenstein Barry Officer | 11,700 | Sale at $32.50 - $32.88 | $382,000 |
| 12-Jun-07 | Zwarenstein Barry Officer | 6,300 | Sale at $32.88 - $33.00 | $208,000 |
| 11-Jun-07 | Atkinson William G. Officer | 10,000 | Sale at $32.44 - $33.00 | $327,000 |
| 1-Jun-07 | Adams Jesse Officer | 6,209 | Sale at $34.41 - $34.62 | $214,000 |
| 1-Jun-07 | Adams Jesse Officer | 5,145 | Sale at $34.62 - $34.93 | $179,000 |
| 1-Jun-07 | Atkinson William G. Officer | 4,375 | Sale at $34.41 - $34.62 | $151,000 |
| 1-Jun-07 | Atkinson William G. Officer | 3,625 | Sale at $34.62 - $34.93 | $126,000 |

47.     The statements made by Defendants and contained in the Company's May 29, 2007 release and in the Company's 2Q:F07 Form 10-Q were materially false and misleading when made, and were know by Defendants to be false at that time or were recklessly disregarded as such thereby for the reasons stated herein in ¶¶ 30(a)-(e), supra.

48.     **3Q:F07 Results Announced.**  On September 6, 2007, Defendants published a release announcing purported strong results for the third quarter of fiscal 2007, the period ended July 31, 2007.  This release stated, in part, the following:

> **VeriFone Reports Third Quarter Fiscal 2007 Results;**
> **Record Revenues of $232 million;**
> **Record EBITDA, as adjusted, margins of 27.3%;**
> **Record EPS, as adjusted, of 42 cents, grew 50%;**
> **Record Operating Cash Flow of $43 million**
>
> VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended July 31, 2007.

Net revenues, for the three months ended July 31, 2007, were $231.9 million, 57% higher than the net revenues of $147.6 million for the comparable period of 2006. Net revenues from VeriFone's International business increased 106% while net revenues from VeriFone's North America business increased 22%. The significant increase in net revenues was driven largely by the acquisition of Lipman Electronic Engineering Ltd., which closed November 1, 2006.

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.2%, for the three months ended July 31, 2007, compared to 45.9% for the comparable period of 2006. GAAP gross margins for the three months ended July 31, 2007, declined to 44.0% from 45.0% for the three months ended July 31, 2006, primarily as a result of increased amortization of purchased technology assets.

* * *

GAAP EPS for the three months ended July 31, 2007, was $0.16 per diluted share, compared to $0.24 per diluted share, for the comparable period of fiscal 2006. This decline resulted from acquisition related non-cash charges, higher stock-based compensation expense and a higher GAAP tax rate driven by an increase in the valuation allowance related to the Lipman acquisition. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended July 31, 2007, increased 50% to $0.42 per diluted share, compared to $0.28 per diluted share, for the comparable period in 2006.

49.     The September 6, 2007 release again quoted Defendant Bergeron in part, as follows:

"I am extremely pleased to report on another outstanding quarter as we once again achieved exceptional financial results," said Douglas G. Bergeron, Chairman and Chief Executive Officer. "During the quarter, we achieved record revenues and record gross and operating margins, all which led to strong EPS growth," continued Bergeron. "Our North American business continued to surge, growing 9% sequentially. Our compelling portfolio of wireless solutions and our strength in emerging markets were also significant factors driving our success this quarter."

"We are increasing our internal expectations for the fourth quarter and now expect to repeat these record third quarter results. Our guidance for the fourth quarter, therefore, is for net revenue of $231 - $233 million and net income, as adjusted, per share of $0.41 - $0.42. As a result, we are also increasing our full year fiscal year 2007 expectations for net income, as adjusted per share to $1.59 to $1.60 per share. As well, given the out-performance in profitability that we have consistently enjoyed since the closing of the Lipman acquisition last November, we are now taking this opportunity to update our long term financial model. We are reaffirming our revenue growth rate projection in the 10% - 15% range and we are increasing our margin expectations as reflected in the table below."

50.     Later the same day on September 6, 2007, Defendants also hosted a conference call for investors and analysts during which Defendant Zwarenstein again provided forward guidance, stating, in part, as follows:

BARRY ZWARENSTEIN, EXECUTIVE VP, CFO, VERIFONE HLDGS INC:

Turning now to guidance. Our guidance for the fourth quarter is for revenue to be between $231 and $233 million and for net income, as adjusted, to be between $34.6 and $35.5 million with an estimated 85.2 million fully diluted shares outstanding, we are now expecting EPS on a net income as adjusted basis to be between $0.41 and $0.42 per share, bringing our guidance for the full year to be between $1.59 and $1.60 per share. GAAP net income for the fourth quarter is expected to be between $17 and $17.9 million.

Also, given our performance and profitability that we have consistently enjoyed since the closing of the Lipman acquisition last November, we are now taking this opportunity to update our long-term financial model. We are reaffirming our revenue growth rate projection in the 10% to 15% range. We are increasing our gross margin range from 42% to 47% to a new range of 45% to 50%, our EBITDA margin range from 18% to 24%, to a new range of 25% to 30%, and our net income as adjusted margin range from 12% to 17% previously to a new range of 15% to 20%. I will now turn the call back over to Doug for some final comments.

51.    **3Q:F07 Form 10-Q**. Also on or about September 6, 2007, Defendants filed with the SEC the Company's 3Q:F07 Form 10-Q, for the fiscal quarter ended July 31, 2007, signed and certified by Defendants Bergeron and Zwarenstein. In addition to making substantially similar statements concerning the Company operations, financial results, controls and procedures, and the Company's purported compliance with GAAP accounting and SEC reporting rules, as had been published previously, the 3Q:F07 Form 10-Q again contained Certifications by Defendants Bergeron and Zwarenstein that attested to the purported accuracy and completeness of these results, which stated, in part, as follows:

**CERTIFICATION PURSUANT TO
18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO
SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

I, Douglas G. **Bergeron**, Chief Executive Officer, and I, Barry **Zwarenstein**, Chief Financial Officer, each certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that the Report of VeriFone Holdings, Inc. (the "Company") on Form 10-Q for the quarterly period ended July 31, 2007, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in such Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: September 7, 2007

1

By:    /s/ **DOUGLAS G. BERGERON**
       Douglas G. Bergeron
2      Chairman and Chief Executive Officer

3

By:    /s/ **BARRY ZWARENSTEIN**
       Barry Zwarenstein
4      Executive Vice President and Chief Financial Officer

5      52.    Following the publication of these purported strong financial results, shares of

6      VeriFone continued to trade at artificially inflated prices.  Taking full advantage of the artificial

7      inflation in the price of Company stock as a result of the publication of Defendants' materially

8      false and misleading statements, Company insiders immediately liquidated large amounts of their

9      personally held VeriFone stock, as follows:

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 26-Oct-07 | Waller Elmore Officer | 3,200 | Sale at $46.25 - $46.96 | $149,000 |
| 26-Oct-07 | Waller Elmore Officer | 6,800 | Sale at $46.97 - $47.24 | $320,000 |
| 10-Oct-07 | Bergeron Douglas Officer | 69,700 | Sale at $45.73 - $46.03 | $3,198,000 |
| 10-Oct-07 | Bergeron Douglas Officer | 69,800 | Sale at $45.50 - $45.72 | $3,184,000 |
| 10-Oct-07 | Bergeron Douglas Officer | 43,200 | Sale at $45.13 - $45.49 | $1,957,000 |
| 9-Oct-07 | Zwarenstein Barry Officer | 3,700 | Sale at $45.01 - $45.73 | $168,000 |
| 9-Oct-07 | Zwarenstein Barry Officer | 100 | Sale at $45.01 | $4,501 |
| 9-Oct-07 | Zwarenstein Barry Officer | 4,700 | Sale at $44.72 - $45.00 | $211,000 |
| 9-Oct-07 | Zwarenstein Barry Officer | 5,100 | Sale at $44.08 - $44.71 | $226,000 |
| 9-Oct-07 | Zwarenstein Barry Officer | 4,400 | Sale at $43.45 - $45.51 | $196,000 |
| 9-Oct-07 | Angel Isaac Officer | 15,000 | Sale at $43.97 - $44.13 | $661,000 |
| 26-Sep-07 | Atkinson William G. Officer | 14,400 | Sale at $42.65 - $42.97 | $616,000 |
| 26-Sep-07 | Atkinson William G. Officer | 12,000 | Sale at $42.98 - $43.33 | $518,0002 |
| 26-Sep-07 | Atkinson William G. Officer | 8,600 | Sale at $43.35 - $43.73 | $374,0002 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 25-Sep-07 | Waller Elmore Officer | 10,000 | Sale at $40.00 | $400,000 |
| 14-Sep-07 | Castle James C Director | 4,500 | Sale at $39.20 - $39.22 | $176,000 |
| 13-Sep-07 | Roche Collin E Director | 3,300,000 | Sale at $38.61 | $127,413,000 |
| 13-Sep-07 | GTCR Co Invest LP Beneficial Owner (+ 10%) | 27,926 | Sale at $38.61 | $1,078,222 |
| 13-Sep-07 | Bondy Craig A Director | 3,300,000 | Sale at $38.61 | $127,413,000 |
| 13-Sep-07 | GTCR CAPITAL PARTNERS L P Beneficial Owner (+10%) | 221,728 | Sale at $38.61 | $8,560,918 |
| 13-Sep-07 | GTCR Fund VII LP Beneficial Owner (+ 10%) | 3,050,346 | Sale at $38.61 | $117,773,859 |
| 12-Sep-07 | Zwarenstein Barry Officer | 3,574 | Disposition (Non Open Market) at $39.85 | $142,423 |
| 11-Sep-07 | Angel Isaac Officer | 15,000 | Sale at $39.62 - $39.77 | $595,000 |
| 11-Sep-07 | Zwarenstein Barry Officer | 9,000 | Sale at $39.81 - $39.99 | $359,000 |
| 11-Sep-07 | Zwarenstein Barry Officer | 9,000 | Sale at $39 - $39.81 | $355,000 |
| 10-Sep-07 | Bergeron Douglas Officer | 31,200 | Sale at $39.18 - $39.39 | $1,226,000 |
| 10-Sep-07 | Bergeron Douglas Officer | 82,500 | Sale at $19.14 - $39.17 | |
| 10-Sep-07 | Bergeron Douglas Officer | 86,300 | Sale at $38.73 - $38.92 | $3,351,000 |

53.    The statements made by Defendants and contained in the Company's September 6, 2007 release and in the Company's 3Q:F07 Form 10-Q were materially false and misleading when made, and were know by Defendants to be false at that time or were recklessly disregarded as such thereby for the reasons stated herein in ¶¶ 30(a)-(e), supra.

## THE TRUE FINANCIAL AND OPERATIONAL CONDITION
## OF VERIFONE IS BELATEDLY DISCLOSED

54.    On December 3, 2007, Defendants shocked and alarmed investors after they published a release that revealed, for the first time, that the Company's previously reported financial statements and reports could no longer be relied upon and that these results for at least the previous three quarters would require to be restated. That day, the Associated Press reported, in part, the following:

> VeriFone: Results Were Overstated
>
> **VeriFone Holdings Shares Plunge After It Says It Overstated 3 Quarters of Profit by 80 Percent**
>
> SAN JOSE (AP) -- VeriFone Holdings Inc. overstated its profit before taxes by almost $30 million -- or 80 percent -- for the first nine months of the fiscal year, the payments processing equipment maker said Monday.
>
> Blaming accounting errors, VeriFone Holdings said it will need to restate results from the first three quarters of fiscal 2007, which ended in October. The company delayed filing its fourth-quarter report pending a complete assessment of the accounting errors.
>
> VeriFone said it did not properly value the products in its inventory, which means the costs the company recorded were too low. Accounting for higher inventory costs, VeriFone said it expects its pretax income to be reduced by roughly $8.9 million for the first quarter, $7 million for the second quarter and $13.8 million for the third quarter.
>
> These reductions would wipe out more than 80 percent of the company's pretax profit during those periods. VeriFone said it is still figuring out how the higher inventory costs will affect net income, which is profit after taxes.
>
> VeriFone's stock plummeted $12.99, or 27.1 percent, to $35.04 in premarket trading Monday. The stock closed Friday at $48.03, up 33.4 percent for the year.

[Emphasis added.]

55.    The revelations that Defendants had materially misrepresented the Company's financial and operational condition, its controls and procedures and its results of operations, belatedly revealed on December 3, 2007, decimated shares of VeriFone. As evidence of this, that day, shares of the Company collapsed over 45.8% in the single trading day - - falling over $22.00 per share to close at $26.03 on very high trading volume of over 49.228 million shares traded.

1

## CAUSATION AND ECONOMIC LOSS

2      56.    During the Class Period, as detailed herein, Defendants engaged in a scheme to

3   deceive the market, and a course of conduct that artificially inflated VeriFone's stock price and

4   operated as a fraud or deceit on Class Period purchasers of VeriFone's stock by misrepresenting

5   the Company's financial results.  Over a period of approximately fourteen months, Defendants

6   improperly inflated the Company's financial results.  Ultimately, however, when Defendants' prior

7   misrepresentations and fraudulent conduct came to be revealed to investors, shares of VeriFone

8   declined precipitously - - evidence that the prior artificial inflation in the price of VeriFone's shares

9   was eradicated.  As a result of their purchases of VeriFone stock during the Class Period, Plaintiff

10   and other members of the Class suffered economic losses, i.e. damages under the federal securities

11   laws.

12      57.    By improperly characterizing the Company's financial results and misrepresenting

13   its prospects, the Defendants presented a misleading image of VeriFone's business and future

14   growth prospects.  During the Class Period, Defendants repeatedly emphasized the ability of the

15   Company to monitor and control costs and expenses, and to report revenues and revenue growth

16   reasonably sufficient to support such costs and expenses.  These claims caused and maintained the

17   artificial inflation in VeriFone's stock price throughout the Class Period and until the truth about

18   the Company was ultimately revealed to investors.

19      58.    Defendants' false and materially misleading statements had the intended effect of

20   causing VeriFone's shares to trade at artificially inflated levels throughout the Class Period  - -

21   reaching a Class Period high of over $50.00 per share in the late fall of 2007.

22      59.    On December 3, 2007, however, as investors learned the truth about the Company

23   and learned that Defendants would be forced to restate the Company's financial and operational

24   results, shares of the Company collapsed.  Defendants' belated disclosures had an immediate,

25   adverse impact on the price of VeriFone shares.

26      60.    These belated revelations also evidenced Defendants' prior falsification of

27   VeriFone's business prospects.  As investors and the market ultimately learned, the Company's

28   prior financial results had been overstated as were the Company's results of operations and

CLASS ACTION COMPLAINT FOR VIOLATION OF          - 33 -
SECURITIES LAWS
010006-11 212766 V1

foreseeable business prospects. As this adverse information became known to investors, the prior artificial inflation began to be eliminated from VeriFone's share price and investors were damaged as a result of the related share price decline.

61.    As a direct result of investors learning the truth about the Company on December 3, 2007, VeriFone's stock price collapsed approximately $26.00 per share - - a decline of over 45% - - or $22.00 per share, on very heavy trading volume of almost 50 million shares, many times the average daily trading volume. This dramatic share price decline eradicated much of the artificial inflation from VeriFone's share price, causing real economic loss to investors who purchased this stock during the Class Period.

62.    The decline in VeriFone's stock price at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud being revealed to investors and to the market. The timing and magnitude of VeriFone's stock price decline negates any inference that the losses suffered by Plaintiff and the other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or even Company-specific facts unrelated to Defendants' fraudulent conduct. During the same period in which VeriFone's share price fell over 40% as a result of Defendants' fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged.

63.    The economic loss, i.e. damages suffered by Plaintiff and other members of the Class, was a direct result of Defendants' fraudulent scheme to artificially inflate the price of VeriFone's stock and the subsequent significant decline in the value of the Company's shares when Defendants' prior misstatements and other fraudulent conduct was revealed, as evidenced by the chart below:

## VIOLATIONS OF GAAP AND SEC REPORTING RULES

64.     During the Class period, Defendants materially misled the investing public, thereby inflating the price of the Company's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its financial performance, accounting, reporting, and financial condition in violation of the federal securities laws and GAAP.

65.     GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the Exchange Act, 17 C.F.R. 210.4-01(a)(1), provides that financial statements filed with the SEC which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate. SEC Rule 13a-13 requires issuers to file quarterly reports.

66.     SEC Rule 12b-20 requires that periodic reports contain such further information as is necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

67.     In addition, Item 303 of Regulation S-K requires that, for interim periods, the Management Division and Analysis Section ("MD&A") must include, among other things, a

1  discussion of any material changes in the registrant's results of operations with respect to the most

2  recent fiscal year-to-date period for which an income statement is provided.  Instructions to Item

3  303 require that the this discussion identify any significant elements of registrant's income or loss

4  from continuing operations that are not necessarily representative of the registrant's ongoing

5  business. Item 303(a)(2)(ii) to Regulation S-K requires the following discussion in the MD&A of a

6  company's publicly filed reports with the SEC:

7  Describe any known trends or uncertainties that have had or that the registrant
   reasonably expects will have a material favorable or unfavorable impact on net sales
8  or revenues or income from continuing operations. If the registrant knows of events
   that will cause a material change in the relationship between costs and revenues
9  (such as known future increases in costs of labor or materials or price increases or
   inventory adjustments), the change in relationship shall be disclosed.

10 Paragraph 3 of the Instructions to Item 303 states in relevant part:

11

12 The discussion and analysis shall focus specifically on material events and
   uncertainties known to management that would cause reported financial information
13 not to be necessarily indicative of future operating results or of future financial
   condition. This would include descriptions and amounts of (A) matters that would
14 have an impact on future operations and have not had an impact in the past. . .

15 68.    The GAAP requirement for recognition of an adequate provision for foreseeable

16 costs and an associated allowance applies to interim financial statements as required by Accounting

17 Principles Board Opinion No. 28.  Paragraph 17 of this authoritative pronouncement states that:

18 The amounts of certain costs and expenses are frequently subjected to
   year-end adjustments even though they can be reasonably approximated at interim
19 dates. To the extent possible such adjustments should be estimated and the
   estimated costs and expenses assigned to interim periods so that the interim periods
20 bear a reasonable portion of the anticipated annual amount.

21 69.    The Company's financial statements contained in the fiscal 2006 Form 10-K and/or

22 the quarterly reports filed with the SEC on Forms 10-Q for the quarterly periods throughout the

23 Class Period were presented in a manner that violated the principle of fair financial reporting and

24 the following GAAP, among others:

25 A.    The principle that financial reporting should provide information that is

26 useful to present and potential investors and creditors and other users in making rational

27 investment, credit and similar decisions (FASB Statement of Concepts No. 1).

28

1    B.    The principle that financial reporting should provide information about an

2    enterprise's financial performance during a period (FASB Statement of Concepts No. 1).

3    C.    The principle that financial reporting should be reliable in that it represents

4    what it purports to represent (FASB Statement of Concepts No. 2).

5    D.    The principle of completeness, which means that nothing material is left out

6    of the information that may be necessary to ensure that it validly represents underlying events and

7    conditions (FASB Statement of Concepts No. 2).

8    E.    The principle that conservatism be used as a prudent reaction to uncertainty

9    to try to ensure that uncertainties and risks inherent in business situations are adequately considered

10    (FASB Statement of Concepts No. 2).

11    F.    The principle that contingencies and other uncertainties that affect the

12    fairness of presentation of financial data at an interim date shall be disclosed in interim reports in

13    the same manner required for annual reports (APB Opinion No. 28).

14    G.    The principle that disclosures of contingencies shall be repeated in interim

15    and annual reports until the contingencies have been removed, resolved, or have become

16    immaterial (APB Opinion No. 28).

17    H.    The principle that management should provide commentary relating to the

18    effects of significant events upon the interim financial results (APB Opinion No. 28).

19    70.    In addition, during the Class Period, Defendants violated SEC disclosure rules in

20    that:

21    A.    Defendants failed to disclose the existence of known trends, events or

22    uncertainties that they reasonably expected would have a material, unfavorable impact on net

23    revenues or income or that were reasonably likely to result in the Company's liquidity decreasing

24    in a material way, in violation of Item 303 of Regulation S-K under the federal securities laws (17

25    C.F.R. 229.303), and that failure to disclose the information rendered the statements that were

26    made during the Class Period materially false and misleading; and

27

28

1         B.     Defendants failed to file financial statements with the SEC that conformed

2   to the requirements of GAAP, such financial statements were presumptively misleading and

3   inaccurate pursuant to Regulation S-X, 17 C.F.R. § 210.4-01(a)(1).

4        71.    Defendants were required to disclose the existence of the material facts described

5   herein and to appropriately recognize and report assets, revenues, and expenses in conformity with

6   GAAP in the Company's financial statements.  The Company failed to make such disclosures and

7   failed to account for and to report its financial statements in conformity with GAAP.  Defendants

8   knew, or were reckless in not knowing, the facts which indicated that the fiscal 2006 Form 10-K

9   and all of the Company's interim financial statements, press releases, public statements, and filings

10  with the SEC, which were disseminated to the investing public during the Class Period, were

11  materially false and misleading for the reasons set forth herein.  Had the true financial position and

12  results of operations of the Company been disclosed during the Class period, the Company's

13  common stock would have traded at prices well below that which it did.

14  <strong>ADDITIONAL SCIENTER ALLEGATIONS</strong>

15       72.    As alleged herein, Defendants acted with scienter in that each Defendant knew that

16  the public documents and statements issued or disseminated in the name of the Company were

17  materially false and misleading; knew that such statements or documents would be issued or

18  disseminated to the investing public; and knowingly and substantially participated or acquiesced in

19  the issuance or dissemination of such statements or documents as primary violations of the federal

20  securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of

21  information reflecting the true facts regarding VeriFone, their control over, and/or receipt and/or

22  modification of VeriFone's allegedly materially misleading misstatements and/or their associations

23  with the Company which made them privy to confidential proprietary information concerning

24  VeriFone, participated in the fraudulent scheme alleged herein.

25       73.    Defendants were motivated to materially misrepresent to the SEC and investors the

26  true financial condition of the Company because: (i) it deceived the investing public regarding

27  VeriFone's business, operations, management and the intrinsic value of VeriFone common stock;

28  (ii) it enabled Defendants to artificially inflate the price of VeriFone shares; (iii) it enabled

VeriFone insiders to sell millions of dollars of their privately held VeriFone shares while in possession of material adverse non-public information about the Company; and (iv) it caused Plaintiff and other members of the Class to purchase VeriFone common stock at artificially inflated prices.

74.    In fact, the full scope of Defendants' and insiders' stock sales may yet be known, and can only be learned after an opportunity for discovery.  However, according to Defendants' SEC filings as well as the Yahoo Finance website, during the Class Period, Company insiders - - including certain of the Defendants named herein - - sold or disposed of over $1.3 billion of their privately held Company stock at artificially inflated prices while in possession of material adverse non-public information about VeriFone, in part, as follows:

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 26-Oct-07 | Waller Elmore Officer | 3,200 | Sale at $46.25 - $46.96 | $149,000 |
| 26-Oct-07 | Waller Elmore Officer | 6,800 | Sale at $46.97 - $47.24 | $320,000 |
| 10-Oct-07 | Bergeron Douglas Officer | 69,700 | Sale at $45.73 - $46.03 | $3,198,000 |
| 10-Oct-07 | Bergeron Douglas Officer | 69,800 | Sale at $45.50 - $45.72 | $3,184,000 |
| 10-Oct-07 | Bergeron Douglas Officer | 43,200 | Sale at $45.13 - $45.49 | $1,957,000 |
| 9-Oct-07 | Zwarenstein Barry Officer | 3,700 | Sale at $45.01 - $45.73 | $168,000 |
| 9-Oct-07 | Zwarenstein Barry Officer | 100 | Sale at $45.01 | $4,501 |
| 9-Oct-07 | Zwarenstein Barry Officer | 4,700 | Sale at $44.72 - $45.00 | $211,000 |
| 9-Oct-07 | Zwarenstein Barry Officer | 5,100 | Sale at $44.08 - $44.71 | $226,000 |
| 9-Oct-07 | Zwarenstein Barry Officer | 4,400 | Sale at $43.45 - $45.51 | $196,000 |
| 9-Oct-07 | Angel Isaac Officer | 15,000 | Sale at $43.97 - $44.13 | $661,000 |
| 26-Sep-07 | Atkinson William G. Officer | 14,400 | Sale at $42.65 - $42.97 | $616,000 |
| 26-Sep-07 | Atkinson William G. Officer | 12,000 | Sale at $42.98 - $43.33 | $518,0002 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 26-Sep-07 | Atkinson William G. Officer | 8,600 | Sale at $43.35 - $43.73 | $374,0002 |
| 25-Sep-07 | Waller Elmore Officer | 10,000 | Sale at $40.00 | $400,000 |
| 14-Sep-07 | Castle James C Director | 4,500 | Sale at $39.20 - $39.22 | $176,000 |
| 13-Sep-07 | Roche Collin E Director | 3,300,000 | Sale at $38.61 | $127,413,000 |
| 13-Sep-07 | GTCR Co Invest LP Beneficial Owner (+ 10%) | 27,926 | Sale at $38.61 | $1,078,222 |
| 13-Sep-07 | Bondy Craig A Director | 3,300,000 | Sale at $38.61 | $127,413,000 |
| 13-Sep-07 | GTCR CAPITAL PARTNERS L P Beneficial Owner (+10%) | 221,728 | Sale at $38.61 | $8,560,918 |
| 13-Sep-07 | GTCR Fund VII LP Beneficial Owner (+ 10%) | 3,050,346 | Sale at $38.61 | $117,773,859 |
| 12-Sep-07 | Zwarenstein Barry Officer | 3,574 | Disposition (Non Open Market) at $39.85 | $142,423 |
| 11-Sep-07 | Angel Isaac Officer | 15,000 | Sale at $39.62 - $39.77 | $595,000 |
| 11-Sep-07 | Zwarenstein Barry Officer | 9,000 | Sale at $39.81 - $39.99 | $359,000 |
| 11-Sep-07 | Zwarenstein Barry Officer | 9,000 | Sale at $39 - $39.81 | $355,000 |
| 10-Sep-07 | Bergeron Douglas Officer | 31,200 | Sale at $39.18 - $39.39 | $1,226,000 |
| 10-Sep-07 | Bergeron Douglas Officer | 82,500 | Sale at $19.14 - $39.17 | |
| 10-Sep-07 | Bergeron Douglas Officer | 86,300 | Sale at $38.73 - $38.92 | $3,351,000 |
| 14-Aug-07 | Angel Isaac Officer | 15,000 | Sale at $36.68 - $36.84 | $551,000 |
| 14-Aug-07 | Zwarenstein Barry Officer | 9,700 | Sale at $36.79 - $37.52 | $360,000 |
| 14-Aug-07 | Zwarenstein Barry Officer | 8,300 | Sale at $36.35 - $36.78 | $303,000 |
| 10-Aug-07 | Waller Elmore Officer | 8,600 | Sale at $38.87 - $39.12 | $335,000 |
| 10-Aug-07 | Waller Elmore | 11,400 | Sale at $38.52 - $38.87 | $441,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| | Officer | | | |
| 10-Aug-07 | Adams Jesse Officer | 11,000 | Sale at $38.84 - $39.10 | $429,000 |
| 10-Aug-07 | Adams Jesse Officer | 9,000 | Sale at $38.52 - $38.83 | $348,000 |
| 10-Aug-07 | Bergeron Douglas Officer | 83,700 | Sale at $39.05 - $39.15 | $3,273,000 |
| 1-Aug-07 | Adams Jesse Officer | 18,525 | Sale at $36.05 - $36.58 | $673,000 |
| 1-Aug-07 | Adams Jesse Officer | 100 | Sale at $36.48 | $3,647 |
| 1-Aug-07 | Adams Jesse Officer | 17,514 | Sale at $35.62 - $36.04 | $628,000 |
| 1-Aug-07 | Adams Jesse Officer | 24,964 | Sale at $35.05 - $35.61 | $882,000 |
| 12-Jul-07 | Bergeron Douglas Officer | 37,300 | Sale at $36.86 - $37.00 | $1,377,000 |
| 12-Jul-07 | Bergeron Douglas Officer | 47,950 | Sale at $36.61 - $36.86 | $1,761,000 |
| 12-Jul-07 | Bergeron Douglas Officer | 71,450 | Sale at $36.49 - $36.60 | $2,611,000 |
| 12-Jul-07 | Bergeron Douglas Officer | 43,300 | Sale at $36.31 - $36.48 | $1,576,000 |
| 10-Jul-07 | Atkinson William G. Officer | 4,900 | Sale at $36.38 - $36.75 | $179,000 |
| 10-Jul-07 | Atkinson William G. Officer | 5,100 | Sale at $36.07 - $36.37 | $185,000 |
| 10-Jul-07 | Zwarenstein Barry Officer | 9,800 | Sale at $36.37 - $36.76 | $358,000 |
| 10-Jul-07 | Zwarenstein Barry Officer | 8,200 | Sale at $36.07 - $36.36 | $297,000 |
| 10-Jul-07 | Angel Isaac Officer | 15,000 | Sale at $36.38 - $36.46 | $546,000 |
| 9-Jul-07 | Waller Elmore Officer | 10,500 | Sale at $36.49 - $36.94 | $386,000 |
| 9-Jul-07 | Waller Elmore Officer | 9,500 | Sale at $36.35 - $36.49 | $346,000 |
| 2-Jul-07 | Atkinson William G. Officer | 5,645 | Sale at $35.11 - $35.43 | $199,000 |
| 2-Jul-07 | Atkinson William G. Officer | 2,355 | Sale at $35.44 - $35.48 | $84,0002 |
| 2-Jul-07 | Adams Jesse | 1,250 | Sale at $35.29 | $44,112 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|------|---------|--------|-------------|-------|
| | Officer | | | |
| 25-Jun-07 | Roche Collin E Director | 3,500,000 | Sale at $35.37 | $123,794,999 |
| 25-Jun-07 | GTCR Co Invest LP Beneficial Owner (+10%) | 29,619 | Sale at $35.37 | $1,047,624 |
| 25-Jun-07 | Bondy Craig A Director | 3,500,000 | Sale at $35.37 | $123,794,999 |
| 25-Jun-07 | GTCR CAPITAL PARTNERS L P Beneficial Owner (+10%) | 235,165 | Sale at $35.37 | $8,317,786 |
| 25-Jun-07 | GTCR Fund VII LP Beneficial Owner (+ 10%) | 3,235,216 | Sale at $35.37 | $114,429,589 |
| 22-Jun-07 | Atkinson William G. Officer | 224 | Disposition (Non Open Market) at $36.36 | $8,144 |
| 22-Jun-07 | Adams Jesse Officer | 224 | Disposition (Non Open Market) at $36.36 | $8,144 |
| 22-Jun-07 | Zwarenstein Barry Officer | 224 | Disposition (Non Open Market) at $36.36 | $8,144 |
| 22-Jun-07 | Bergeron Douglas Officer | 894 | Disposition (Non Open Market) at $36.36 | $32,505 |
| 13-Jun-07 | Angel Isaac Officer | 15,000 | Sale at $34.36 | $515,400 |
| 13-Jun-07 | Waller Elmore Officer | 20,000 | Sale at $35.00 | $700,000 |
| 12-Jun-07 | Bergeron Douglas Officer | 46,100 | Sale at $32.87 - $33.10 | $1,521,000 |
| 12-Jun-07 | Bergeron Douglas Officer | 63,800 | Sale at $32.65 - $32.86 | $2,090,000 |
| 12-Jun-07 | Bergeron Douglas Officer | 40,100 | Sale at $32.43 - $32.64 | $1,305,000 |
| 12-Jun-07 | Zwarenstein Barry Officer | 11,700 | Sale at $32.50 - $32.88 | $382,000 |
| 12-Jun-07 | Zwarenstein Barry Officer | 6,300 | Sale at $32.88 - $33.00 | $208,000 |
| 11-Jun-07 | Atkinson William G. Officer | 10,000 | Sale at $32.44 - $33.00 | $327,000 |
| 1-Jun-07 | Adams Jesse Officer | 6,209 | Sale at $34.41 - $34.62 | $214,000 |
| 1-Jun-07 | Adams Jesse Officer | 5,145 | Sale at $34.62 - $34.93 | $179,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 1-Jun-07 | Atkinson William G. Officer | 4,375 | Sale at $34.41 - $34.62 | $151,000 |
| 1-Jun-07 | Atkinson William G. Officer | 3,625 | Sale at $34.62 - $34.93 | $126,000 |
| 14-May-07 | Bergeron Douglas Officer | 88,100 | Sale at $37.78 - $37.99 | $3,338,000 |
| 10-May-07 | Atkinson William G. Officer | 10,000 | Sale at $37.51 - $38.30 | $379,000 |
| 10-May-07 | Bergeron Douglas Officer | 21,671 | Sale at $38.07 - $38.34 | $828,000 |
| 10-May-07 | Bergeron Douglas Officer | 28,164 | Sale at $37.97 - $38.07 | $1,071,000 |
| 10-May-07 | Bergeron Douglas Officer | 47,600 | Sale at $37.78 - $37.96 | $1,803,000 |
| 8-May-07 | Zwarenstein Barry Officer | 8,200 | Sale at $37.14 - $37.58 | $306,000 |
| 8-May-07 | Zwarenstein Barry Officer | 9,700 | Sale at $37.58 - $37.88 | $366,000 |
| 8-May-07 | Angel Isaac Officer | 15,000 | Sale at $37.56 - $37.58 | $564,000 |
| 1-May-07 | Adams Jesse Officer | 9,334 | Sale at $35.50 - $35.81 | $333,000 |
| 1-May-07 | Adams Jesse Officer | 11,833 | Sale at $35.82 - $35.97 | $425,000 |
| 1-May-07 | Atkinson William G. Officer | 3,527 | Sale at $35.50 - $35.81 | $126,000 |
| 1-May-07 | Atkinson William G. Officer | 4,473 | Sale at $35.82 - $35.97 | $161,000 |
| 11-Apr-07 | Bergeron Douglas Officer | 24,000 | Sale at $37.50 - $37.8 | $904,000 |
| 10-Apr-07 | Atkinson William G. Officer | 3,215 | Sale at $37.48 - $37.87 | $121,000 |
| 10-Apr-07 | Zwarenstein Barry Officer | 12,215 | Sale at $37.87 - $38.04 | $464,000 |
| 10-Apr-07 | Zwarenstein Barry Officer | 5,785 | Sale at $37.48 - $37.87 | $218,000 |
| 10-Apr-07 | Angel Isaac Officer | 15,000 | Sale at $37.85 - $37.87 | $568,000 |
| 10-Apr-07 | Atkinson William G. Officer | 6,785 | Sale at $37.87 - $38.04 | $258,000 |
| 2-Apr-07 | Atkinson William G. Officer | 2,449 | Sale at $36.36 - $37.76 | $91,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 2-Apr-07 | Atkinson William G. Officer | 5,551 | Sale at $36.18 - $36.35 | $201,000 |
| 2-Apr-07 | Adams Jesse Officer | 2,212 | Sale at $36.43 - $36.85 | $81,000 |
| 2-Apr-07 | Adams Jesse Officer | 12,392 | Sale at $36.18 - $36.42 | $450,000 |
| 22-Mar-07 | Atkinson William G. Officer | 894 | Disposition (Non Open Market) at $37.60 | $33,614 |
| 22-Mar-07 | Adams Jesse Officer | 894 | Disposition (Non Open Market) at $37.60 | $33,614 |
| 22-Mar-07 | Zwarenstein Barry Officer | 894 | Disposition (Non Open Market) at $37.60 | $33,614 |
| 22-Mar-07 | Bergeron Douglas Officer | 3,575 | Disposition (Non Open Market) at $37.60 | $134,420 |
| 15-Mar-07 | Zwarenstein Barry Officer | 5,400 | Sale at $36 - $36.22 | $195,000 |
| 15-Mar-07 | Zwarenstein Barry Officer | 12,600 | Sale at $35.75 - $35.98 | $452,000 |
| 15-Mar-07 | Bergeron Douglas Officer | 19,700 | Sale at $36.10 - $36.27 | $713,000 |
| 15-Mar-07 | Bergeron Douglas Officer | 69,613 | Sale at $35.92 - $36.1 | $2,507,000 |
| 15-Mar-07 | Bergeron Douglas Officer | 110,687 | Sale at $35.83 - $35.92 | $3,971,000 |
| 13-Mar-07 | Angel Isaac Officer | 15,000 | Sale at $35.93 - $36.24 | $541,000 |
| 12-Mar-07 | Atkinson William G. Officer | 6,300 | Sale at $36.38 - $36.62 | $230,000 |
| 12-Mar-07 | Atkinson William G. Officer | 3,700 | Sale at $36.63 - $36.83 | $136,000 |
| 1-Mar-07 | Atkinson William G. Officer | 5,026 | Sale at $38.38 - $38.79 | $194,000 |
| 1-Mar-07 | Atkinson William G. Officer | 2,974 | Sale at $37.23 - $38.37 | $112,000 |
| 1-Mar-07 | Adams Jesse Officer | 8,391 | Sale at $38.38 - $38.79 | $324,000 |
| 1-Mar-07 | Adams Jesse Officer | 4,963 | Sale at $37.23 - $38.37 | $188,000 |
| 8-Feb-07 | Angel Isaac Officer | 15,000 | Sale at $40.60 - $40.75 | $610,000 |
| 1-Feb-07 | Atkinson William G. Officer | 2,938 | Sale at $40.25 - $40.44 | $119,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| 1-Feb-07 | Atkinson William G. Officer | 5,062 | Sale at $39.96 - $40.25 | $203,000 |
| 1-Feb-07 | Waller Elmore Officer | 4,509 | Sale at $40.24 - $40.44 | $182,000 |
| 1-Feb-07 | Waller Elmore Officer | 5,491 | Sale at $39.96 - $40.23 | $220,000 |
| 1-Feb-07 | Adams Jesse Officer | 7,773 | Sale at $40.25 - $40.44 | $314,000 |
| 1-Feb-07 | Adams Jesse Officer | 13,393 | Sale at $39.96 - $40.25 | $537,000 |
| 22-Jan-07 | Atkinson William George Officer | 7,329 | Sale at $37.90 - $38.08 | $278,000 |
| 22-Jan-07 | Atkinson William George Officer | 10,671 | Sale at $37.47 - $37.86 | $402,000 |
| 10-Jan-07 | Bergeron Douglas Officer | 200,000 | Sale at $35.30 - $35.55 | $7,085,000 |
| 9-Jan-07 | Zwarenstein Barrv Officer | 4,000 | Sale at $35.21 - $35.58 | $142,000 |
| 3-Jan-07 | Waller Elmore Officer | 10,000 | Sale at $35.58 - $36.10 | $358,000 |
| 3-Jan-07 | Adams Jesse Officer | 5,100 | Sale at $35.81 - $36.13 | $183,000 |
| 3-Jan-07 | Adams Jesse Officer | 10,424 | Sale at $35.11 - $35.80 | $370,000 |
| 19-Dec-06 | Timm Daniel L Director | 3,000,000 | Sale at $35.78 | $107,340,000 |
| 19-Dec-06 | Roche Collin E Director | 3,000,000 | Sale at $35.78 | $107,340,000 |
| 19-Dec-06 | Gtcr Co Invest Lp Beneficial Owner (10% Or More) | 25,387 | Sale at $35.87 | $910,631 |
| 19-Dec-06 | Bondv Craig A Director | 3,000,000 | Sale at $35.78 | $107,340,000 |
| 19-Dec-06 | GTCR CAPITAL PARTNERS L P Beneficial Owner (10% Or More) | 201,571 | Sale at $35.78 | $7,212,210 |
| 19-Dec-06 | GTCR Fund VII LP Beneficial Owner (10% Or More) | 2,773,042 | Sale at $35.78 | $99,219,442 |
| 13-Dec-06 | Bergeron Douglas | 3,700 | Sale at $37.14 - $37.21 | $138,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| | Officer | | | |
| 13-Dec-06 | Bergeron Douglas Officer | 12,500 | Sale at $36.81 - $37.12 | $462,000 |
| 13-Dec-06 | Bergeron Douglas Officer | 18,840 | Sale at $36.61 - $36.80 | $692,000 |
| 13-Dec-06 | Bergeron Douglas Officer | 37,800 | Sale at $36.51 - $36.60 | $1,382,000 |
| 13-Dec-06 | Bergeron Douglas Officer | 27,200 | Sale at $36.39 - $36.51 | $991,000 |
| 12-Dec-06 | Zwarenstein Barry Officer | 4,000 | Sale at $36.86 - $37.57 | $149,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 12,300 | Sale at $36.29 - $36.5 | $448,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 10,600 | Sale at $35.97 - $36.28 | $383,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 28,800 | Sale at $35.89 - $35.96 | $1,035,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 21,300 | Sale at $35.75 - $35.89 | $763,000 |
| 11-Dec-06 | Bergeron Douglas Officer | 26,900 | Sale at $35.55 - $35.74 | $959,0002 |
| 4-Dec-06 | Bergeron Douglas Officer | 20,900 | Sale at $34.33 - $34.57 | $720,000 |
| 4-Dec-06 | Bergeron Douglas Officer | 61,100 | Sale at $33.99 - $34.32 | $2,087,000 |
| 1-Dec-06 | Atkinson William G. Officer | 970 | Sale at $33.38 - $33.60 | $32,000 |
| 1-Dec-06 | Waller Elmore Officer | 1,942 | Sale at $33.38 - $33.60 | $65,000 |
| 1-Dec-06 | Waller Elmore Officer | 8,058 | Sale at $33.12 - $33.37 | $268,000 |
| 1-Dec-06 | Turnbull David Officer | 1,552 | Sale at $33.38 - $33.60 | $52,000 |
| 1-Dec-06 | Turnbull David Officer | 6,448 | Sale at $33.12 - $33.37 | $214,000 |
| 1-Dec-06 | Atkinson William G. Officer | 4,030 | Sale at $33.12 - $33.37 | $134,000 |
| 1-Dec-06 | Adams Jesse Officer | 960 | Sale at $33.38 - $33.60 | $32,000 |
| 1-Dec-06 | Adams Jesse Officer | 3,985 | Sale at $33.12 - $33.37 | $132,000 |
| 1-Dec-06 | Bergeron Douglas | 17,500 | Sale at $33.40 - $33.63 | $587,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|---|---|---|---|---|
| | Officer | | | |
| 1-Dec-06 | Bergeron Douglas Officer | 50,500 | Sale at $33.26 - $33.40 | $1,683,000 |
| 30-Nov-06 | Zwarenstein Barry Officer | 4,000 | Sale at $32.82 - $33.75 | $133,000 |
| 1-Nov-06 | Waller Elmore Officer | 4,810 | Sale at $29.79 - $30.17 | $144,000 |
| 1-Nov-06 | Waller Elmore Officer | 5,190 | Sale at $29.39 - $29.78 | $154,000 |
| 1-Nov-06 | Turnbull David Officer | 3,849 | Sale at $29.79 - $30.17 | $115,000 |
| 1-Nov-06 | Turnbull David Officer | 4,151 | Sale at $29.39 - $29.78 | $123,000 |
| 1-Nov-06 | Atkinson William G. Officer | 2,404 | Sale at $29.79 - $30.17 | $72,000 |
| 1-Nov-06 | Atkinson William G. Officer | 2,596 | Sale at $29.39 - $29.78 | $77,000 |
| 1-Nov-06 | Adams Jesse Officer | 3,833 | Sale at $29.79 - $30.17 | $115,000 |
| 1-Nov-06 | Adams Jesse Officer | 4,140 | Sale at $29.39 - $29.78 | $122,000 |
| 1-Nov-06 | Bergeron Douglas Officer | 57,400 | Sale at $29.95 - $30.30 | $1,729,000 |
| 1-Nov-06 | Bergeron Douglas Officer | 28,900 | Sale at $29.66 - $29.94 | $861,000 |
| 1-Nov-06 | Bergeron Douglas Officer | 19,000 | Sale at $29.54 - $29.65 | $562,000 |
| 1-Nov-06 | Bergeron Douglas Officer | 19,700 | Sale at $29.29 - $29.54 | $579,000 |
| 31-Oct-06 | Zwarenstein Barry Officer | 4,000 | Sale at $29 - $29.22 | $116,000 |
| 2-Oct-06 | Turnbull David Officer | 4,611 | Sale at $28.02 - $28.52 | $130,000 |
| 2-Oct-06 | Turnbull David Officer | 3,319 | Sale at $27.63 - $28.01 | $92,000 |
| 2-Oct-06 | Atkinson William G. Officer | 2,881 | Sale at $28.02 - $28.52 | $81,000 |
| 2-Oct-06 | Atkinson William G. Officer | 2,119 | Sale at $27.63 - $28.01 | $59,000 |
| 2-Oct-06 | Adams Jesse Officer | 4,593 | Sale at $28.02 - $28.52 | $130,000 |
| 2-Oct-06 | Adams Jesse | 3,380 | Sale at $27.63 - $28.01 | $94,000 |

| DATE | INSIDER | SHARES | TRANSACTION | VALUE |
|------|---------|--------|-------------|-------|
| | Officer | | | |
| 2-Oct-06 | Bergeron Douglas Officer | 11,100 | Sale at $28.17 - $28.45 | $314,000 |
| 2-Oct-06 | Bergeron Douglas Officer | 17,200 | Sale at $28.05 - $28.16 | $483,000 |
| 29-Sep-06 | Zwarenstein Barry Officer | 4,000 | Sale at $28.55 - $29 | $115,000 |
| 5-Sep-06 | Bergeron Douglas Officer | 114,400 | Sale at $27.97 - $28.13 | $3,209,000 |
| 5-Sep-06 | Bergeron Douglas Officer | 5,400 | Sale at $28.14 - $28.76 | $154,000 |
| 1-Sep-06 | Adams Jesse Officer | 8,000 | Sale at $27.25 - $28.11 | $221,000 |
| 1-Sep-06 | Atkinson William G. Officer | 5,000 | Sale at $27.25 - $28.11 | $138,000 |
| 1-Sep-06 | Turnbull David Officer | 8,000 | Sale at $27.25 - $28.11 | $221,000 |
| 31-Aug-06 | Zwarenstein Barry Officer | 4,000 | Sale at $22.70 - $23.24 | $92,000 |

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

75.     At all relevant times, the market for VeriFone's common stock was an efficient market for the following reasons, among others:

A.     VeriFone's stock met the requirements for listing, and was listed and actively traded on the NYSE national market exchange, a highly efficient and automated market;

B.     As a regulated issuer, VeriFone filed periodic public reports with the SEC and the NYSE;

C.     VeriFone regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

D.     VeriFone was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain

1    customers of their respective brokerage firm(s). Each of these reports was publicly available and

2    entered the public marketplace.

3        76.    As a result of the foregoing, the market for VeriFone securities promptly digested

4    current information regarding VeriFone from all publicly available sources and reflected such

5    information in VeriFone stock price. Under these circumstances, all purchasers of VeriFone

6    common stock during the Class Period suffered similar injury through their purchase of VeriFone

7    common stock at artificially inflated prices and a presumption of reliance applies.

8                                    **NO SAFE HARBOR**

9        77.    The statutory safe harbor provided for forward-looking statements under certain

10    circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

11    Many of the specific statements pleaded herein were not identified as "forward-looking statements"

12    when made. To the extent there were any forward-looking statements, there were no meaningful

13    cautionary statements identifying important factors that could cause actual results to differ

14    materially from those in the purportedly forward-looking statements. Alternatively, to the extent

15    that the statutory safe harbor does apply to any forward-looking statements pleaded herein,

16    Defendants are liable for those false forward-looking statements because at the time each of those

17    forward-looking statements was made, the particular speaker knew that the particular forward-

18    looking statement was false, and/or the forward-looking statement was authorized and/or approved

19    by an executive officer of VeriFone who knew that those statements were false when made.

20                                 **BASIS OF ALLEGATIONS**

21        78.    Plaintiff has alleged the following based upon the investigation of Plaintiff's

22    counsel, which included a review of SEC filings by VeriFone, as well as regulatory filings and

23    reports, securities analysts' reports and advisories about the Company, press releases and other

24    public statements issued by the Company, and media reports about the Company, and Plaintiff

25    believes that substantial additional evidentiary support will exist for the allegations set forth herein

26    after a reasonable opportunity for discovery.

27

28

## FIRST CAUSE OF ACTION

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

79.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding VeriFone's business, operations, management and the intrinsic value of VeriFone common stock; (ii) enable Defendants to artificially inflate the price of VeriFone shares; (iii) enable VeriFone insiders to sell millions of dollars of their privately held VeriFone shares while in possession of material adverse non-public information about the Company; and (iv) cause Plaintiff and other members of the Class to purchase VeriFone common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, jointly and individually (and each of them) took the actions set forth herein.

81.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for VeriFone's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

82.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of VeriFone as specified herein.

83.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

1   of conduct as alleged herein in an effort to assure investors of VeriFone's value and performance

2   and continued substantial growth, which included the making of, or the participation in the making

3   of, untrue statements of material facts and omitting to state material facts necessary in order to

4   make the statements made about VeriFone and its business operations and future prospects in the

5   light of the circumstances under which they were made, not misleading, as set forth more

6   particularly herein, and engaged in transactions, practices and a course of business which operated

7   as a fraud and deceit upon the purchasers of VeriFone common stock during the Class Period.

8       84.     Each of the Individual Defendants' primary liability, and controlling person

9   liability, arises from the following facts: (i) the Individual Defendants were high-level executives

10  and/or directors at the Company during the Class Period and members of the Company's

11  management team or had control thereof; (ii) each of these Defendants, by virtue of his

12  responsibilities and activities as a senior officer and/or director of the Company was privy to and

13  participated in the creation, development and reporting of the Company's internal budgets, plans,

14  projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and

15  familiarity with the other Defendants and was advised of and had access to other members of the

16  Company's management team, internal reports and other data and information about the

17  Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants

18  was aware of the Company's dissemination of information to the investing public which they knew

19  or recklessly disregarded was materially false and misleading.

20      85.     The Defendants had actual knowledge of the misrepresentations and omissions of

21  material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

22  ascertain and to disclose such facts.   Such Defendants' material misrepresentations and/or

23  omissions were done knowingly or with recklessly for the purpose and effect of concealing

24  VeriFone's operating condition and future business prospects from the investing public and

25  supporting the artificially inflated price of its common stock.  As demonstrated by Defendants'

26  overstatements and misstatements of the Company's business, operations and earnings throughout

27  the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and

28

1  omissions alleged, were reckless in failing to obtain such knowledge by recklessly refraining from

2  taking those steps necessary to discover whether those statements were false or misleading.

3        86.    As a result of the dissemination of the materially false and misleading information

4  and failure to disclose material facts, as set forth above, the market price of VeriFone common

5  stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of

6  VeriFone's publicly-traded common stock were artificially inflated, and relying directly or

7  indirectly on the false and misleading statements made by Defendants, or upon the integrity of the

8  market in which the securities trade, and/or on the absence of material adverse information that was

9  known to or recklessly disregarded by Defendants but not disclosed in public statements by

10 Defendants during the Class Period, Plaintiff and the other members of the Class acquired

11 VeriFone common stock during the Class Period at artificially high prices and were damaged

12 thereby.

13       87.    At the time of said misrepresentations and omissions, Plaintiff and other members

14 of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other

15 members of the Class and the marketplace known the truth regarding the problems that VeriFone

16 was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the

17 Class would not have purchased or otherwise acquired their VeriFone common stock, or, if they

18 had acquired such common stock during the Class Period, they would not have done so at the

19 artificially inflated prices which they paid.

20       88.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange

21 Act, and Rule 10b-5 promulgated thereunder.

22       89.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

23 other members of the Class suffered damages in connection with their respective purchases and

24 sales of the Company's common stock during the Class Period.

## SECOND CAUSE OF ACTION

### Violation Of Section 20(a) Of
### The Exchange Act Against Individual Defendants

90.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

91.    The Individual Defendants acted as controlling persons of VeriFone within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

92.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

93.    As set forth above, VeriFone and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

1

## PRAYER FOR RELIEF

2       **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

3              A.      Determining that this action is a proper class action, designating Plaintiff as

4   Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules

5   of Civil Procedure and Plaintiff's counsel as Lead Counsel;

6              B.      Awarding compensatory damages in favor of Plaintiff and the other Class

7   members against all Defendants, jointly and severally, for all damages sustained as a result of

8   Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

9              C.      Awarding Plaintiff and the Class their reasonable costs and expenses

10  incurred in this action, including counsel fees and expert fees;

11             D.      Awarding extraordinary, equitable and/or injunctive relief as permitted by

12  law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and

13  any appropriate state law remedies to assure that the Class has an effective remedy; and

14             E.      Such other and further relief as the Court may deem just and proper.

15

## DEMAND FOR JURY TRIAL

16      Plaintiff, by ccounsel, requests a trial by jury on those causes set forth herein.

17  Dated: December 10, 2007              HAGENS BERMAN SOBOL SHAPIRO, LLP

18

19                                       By: _____

20                                           REED R. KATHREIN (139304)

21                                       715 Hearst Avenue, Suite 202
                                         Berkeley, CA 94710
22                                       Telephone: (510) 725-3000
                                         Facsimile: (510) 725-3001
23                                       reed@hbsslaw.com

24                                       Steve Berman
                                         HAGENS BERMAN SOBOL SHAPIRO, LLP
25                                       1301 Fifth Avenue, Suite 2900
                                         Seattle, WA 98101
26                                       Telephone: (206) 623-7292
                                         Facsimile: (206) 623-0594
27                                       steve@hbsslaw.com

28

CLASS ACTION COMPLAINT FOR VIOLATION OF          - 54 -
SECURITIES LAWS
010006-11 212766 V1

1

2      Kim E. Miller
       KAHN GAUTHIER SWICK, LLC
3      12 East 41st Street
       New York, NY 10017
4      Telephone: (212) 696-3730
       Facsimile: (504) 455-1498
5      kim.miller@kgscounsel.com

6      Lewis S. Kahn
       KAHN GAUTHIER SWICK, LLC
7      650 Poydras Street, Suite 2150
       New Orleans, LA  70130
8      Telephone: (504) 455-1400
       Facsimile:  (504) 455-1498
9      lewis.kahn@kgscounsel.com

10     Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATION OF          - 55 -
SECURITIES LAWS
010006-11 212766 V1

## CERTIFICATION IN SUPPORT OF APPLICATION FOR LEAD PLAINTIFF

_____(name) ("plaintiff") declares, as to the claims asserted under the federal securities law, that:

1.    Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

2.    Plaintiff did not purchase securities of Verifone Holdings, Inc. at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    During the Class Period, plaintiff has executed transactions in the securities of Verifone Holdings, Inc. as follows.  See Attached Schedule.

5.    In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.    Plaintiff will not accept payment for serving as a lead plaintiff beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: 12/05_____, 2007

                                                                    Plaintiff

WESTEND CAPITAL MANAGEMENT LLC
TRANSACTION SUMMARY

| Tran Code | Trade Date | Quantity | Trade Amount | Lot |
|------|------------|----------|--------------|-----|
| by | 10/17/2006 | 1000 | 28707 | |
| by | 10/17/2006 | 400 | 11495 | |
| by | 10/17/2006 | 200 | 5755 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 300 | 8625 | |
| by | 10/17/2006 | 500 | 14365 | |
| by | 10/17/2006 | 400 | 11495 | |
| by | 10/17/2006 | 300 | 8625 | |
| by | 10/17/2006 | 200 | 5755 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 400 | 11495 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 600 | 17235 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 15000 | 430617 | |
| by | 10/17/2006 | 3000 | 86106 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 100 | 2870 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 200 | 5755 | |
| by | 10/17/2006 | 3500 | 100461 | |
| by | 10/17/2006 | 300 | 8625 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 300 | 8625 | |
| by | 10/17/2006 | 500 | 14365 | |
| by | 10/17/2006 | 800 | 22967 | |
| by | 10/17/2006 | 300 | 8625 | |
| by | 10/17/2006 | 300 | 8625 | |
| by | 10/17/2006 | 400 | 11495 | |
| by | 10/17/2006 | 200 | 5755 | |
| by | 10/17/2006 | 1200 | 34447 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 300 | 8625 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 100 | 2885 | |
| by | 10/17/2006 | 400 | 11495 | |

| | | | |
|---|---|---|---|
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 400 | 11495 |
| by | 10/17/2006 | 500 | 14365 |
| by | 10/17/2006 | 500 | 14365 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 5000 | 143524 |
| by | 10/17/2006 | 3000 | 86106 |
| by | 10/17/2006 | 400 | 11495 |
| by | 10/17/2006 | 1200 | 34447 |
| by | 10/17/2006 | 300 | 8625 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 400 | 11488 |
| by | 10/17/2006 | 500 | 14365 |
| by | 10/17/2006 | 700 | 20098 |
| by | 10/17/2006 | 300 | 8625 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 1000 | 28707 |
| by | 10/17/2006 | 400 | 11495 |
| by | 10/17/2006 | 300 | 8625 |
| by | 10/17/2006 | 600 | 17235 |
| by | 10/17/2006 | 1400 | 40187 |
| by | 10/17/2006 | 400 | 11495 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 3000 | 86106 |
| by | 10/17/2006 | 3500 | 100461 |
| by | 10/17/2006 | 600 | 17235 |
| by | 10/17/2006 | 2100 | 60277 |
| by | 10/17/2006 | 300 | 8625 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 3500 | 100461 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 300 | 8625 |
| by | 10/17/2006 | 1000 | 28707 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 300 | 8625 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 400 | 11495 |
| by | 10/17/2006 | 2000 | 57407 |
| by | 10/17/2006 | 500 | 14365 |
| by | 10/17/2006 | 200 | 5755 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 100 | 2885 |

| | | | |
|---|---|---|---|
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 400 | 11495 |
| by | 10/17/2006 | 500 | 14365 |
| by | 10/17/2006 | 400 | 11488 |
| by | 10/17/2006 | 100 | 2885 |
| by | 10/17/2006 | 300 | 8625 |
| by | 10/17/2006 | 400 | 11495 |
| sl | 10/25/2006 | 100 | 2884 |
| by | 11/6/2006 | 100 | 3145 |
| by | 12/12/2006 | 350 | 13080 |
| by | 12/12/2006 | 300 | 11214 |
| by | 12/12/2006 | 300 | 11214 |
| by | 12/12/2006 | 50 | 1881 |
| by | 12/28/2006 | 150 | 5367 |
| by | 1/4/2007 | 1000 | 35686 |
| by | 1/4/2007 | 1000 | 35686 |
| by | 1/11/2007 | 2000 | 70804 |
| by | 1/11/2007 | 2000 | 70804 |
| sl | 3/2/2007 | 300 | 11550 |
| by | 3/23/2007 | 200 | 7529 |
| sl | 4/16/2007 | 400 | 14675 |
| by | 6/15/2007 | 1000 | 36351 |
| by | 6/15/2007 | 1000 | 36351 |
| by | 6/15/2007 | 200 | 7284 |
| by | 6/15/2007 | 200 | 7284 |
| by | 6/15/2007 | 200 | 7284 |
| by | 6/15/2007 | 100 | 3649 |
| by | 6/15/2007 | 400 | 14552 |
| by | 6/15/2007 | 200 | 7284 |
| by | 6/15/2007 | 2000 | 72694 |
| by | 6/15/2007 | 2000 | 72694 |
| by | 6/15/2007 | 1000 | 36351 |
| by | 6/15/2007 | 1000 | 36351 |
| by | 6/15/2007 | 3000 | 109038 |
| by | 6/15/2007 | 1000 | 36358 |
| by | 6/15/2007 | 300 | 10918 |
| by | 6/15/2007 | 200 | 7284 |
| by | 6/15/2007 | 1000 | 36351 |
| by | 6/25/2007 | 200 | 7187 |
| sl | 8/1/2007 | 900 | 32706 |
| sl | 8/1/2007 | 100 | 3636 |
| sl | 11/16/2007 | 200 | 8535 |

<u>Cases Where Representative Class Position Sought</u>:

1. Refco, Inc.

2. Pixelplus Company, Ltd.